Irene R. O'CONNOR, etc., Plaintiff,

v.

**SEVERAL UNKNOWN CORRECTION-
AL OFFICERS, et al., Defendants.**

Civ. A. No. 81–0436–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Oct. 15, 1981.

**1346**

Gerald T. Zerkin, Richmond, Va., for plaintiff.

Burnett Miller, III, Asst. Atty. Gen. of Va., Richmond, Va., for defendants.

### MEMORANDUM

MERHIGE, District Judge.

The instant action is one brought by the Administratrix of the estate of a former inmate of the New Kent Correctional Unit against certain officials and employees of the Virginia Department of Corrections. Plaintiff seeks damages under 42 U.S.C. § 1983. Jurisdiction is conferred on the court by 28 U.S.C. §§ 1331 and 1343.

Plaintiff alleges that actions by the defendants which resulted in her decedent's death violated the decedent's rights to due process and to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the Constitution of the United States.

Defendants have moved to dismiss the complaint for reasons which will be addressed.

Accepting the complaint as factual, it is contended that the deceased suffered from cardiovascular disease. This condition was diagnosed after a June 30—July 15, 1979 hospital stay while plaintiff's decedent was a state prisoner assigned to the New Kent Correctional Unit.

On August 16, 1979, decedent's doctors determined that he should be admitted to the Medical College of Virginia Hospital for surgery to be performed on August 25, 1979.

Plaintiff alleges that the "several unknown correctional officers" transported decedent to Medical College of Virginia Hospital on August 25, 1979, but his admission to that institution was denied by other "unknown" officers, and he was returned to the New Kent unit.

On that same day while at the New Kent unit, decedent suffered cardiac arrest and died.

Plaintiff claims that defendants were aware of the deceased's health problems, but failed to have medical personnel or emergency vehicles at New Kent, failed to act on August 25, 1979, and called the New Kent Sheriff's Department instead of the rescue squad when the incident occurred. Plaintiff asserts that these acts and omissions amount to a denial of due process and cruel and unusual punishment.

On May 28, 1981, defendants moved to dismiss this action. Plaintiff responded on June 30, 1981. This response was timely under an order of this Court which extended plaintiff's response time through June 29.

The defendants' claimed grounds for dismissal are as follows:

(1) plaintiff lacks standing to sue under § 1983 because she claims only that the constitutional rights of another have been violated and does not assert that her own rights have been infringed;

(2) the deceased's constitutional claims did not survive his death;

(3) Virginia's wrongful death statute precludes the punitive damages plaintiff claims and limits compensatory damages to those the beneficiaries can show occurred to them personally;

(4) plaintiff's suit is against the defendants in their individual and official capacities; a suit against them in their official capacities is barred by the Eleventh Amendment.

The first two arguments of the defendants blend into one problem, for the plaintiff herein does have standing to sue as the personal representative of the deceased's estate in a wrongful death action if such an action is available under § 1983, *i. e.* if the deceased's constitutional claims survived his death. Here the alleged constitutional violations by the defendants are alleged to be the cause of the decedent's death.

42 U.S.C. § 1983 itself is silent on the question of survivability. In such circumstances, the Court is directed by 42 U.S.C. § 1988 to follow "the common law, as modified and changed by the constitution and statutes of the State wherein [this Court sits] . . . so far as the same is not inconsistent with the Constitution and laws of the United States . . . ."

Many courts have held that state law governs the question of whether an action under § 1983 survives the death of the injured party, both in cases where the acts of the defendants bore no connection to that party's death and in cases where the alleged constitutional deprivations were the cause of death. These courts have allowed the survival of a § 1983 action if so provided by state law. *Landrum v. Moats*, 576 F.2d 1320 (8th Cir. 1978) (mother of son killed by police officers could bring civil rights action since state law granted her standing); *Brazier v. Cherry*, 293 F.2d 401 (5th Cir. 1961) (death caused by beating at hands of policemen; state law allowed survival); *Black v. Cook*, 444 F.Supp. 61 (W.D. Okl.1977) (state law did not provide for survival of an action to recover damages for violation of a decedent's civil rights while he was alive); *James v. Murphy*, 392 F.Supp. 641 (M.D.Ala.1975) (claim of cruel and unusual punishment, inflicted on inmate who died while imprisoned, survived his death under state law; plaintiff thus could stand in his place and assert this claim); *Evain v. Conlisk*, 364 F.Supp. 1188 (N.D.Ill.1973) *affirmed without opinion*, 498 F.2d 1403 (7th Cir. 1974) (cause of action survives for the benefit of deceased's estate where the deprivation of the individual's rights results in death, if so provided by state law).

The Court of Appeals for the Fourth Circuit followed this rule in *Dean v. Shirer*, 547 F.2d 227 (4th Cir. 1976), a § 1983 action where the plaintiff died during the pendency of his suit for reasons unrelated to the defendant's actions. The Court relied on a South Carolina statute which provided for survival of injuries to the person and held that the deceased's action for assault or false imprisonment did survive.

The applicability of the state survival statutes to § 1983 actions was confirmed by the Supreme Court in *Robertson v. Wegmann*, 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978). There, the plaintiff in a § 1983 action died while his suit was pending. His death was unrelated to the defendants' actions. The Court ruled that under § 1988 the applicable state law governed the survivability issue. Under the state rule, the deceased's action abated because no person with the required relationship to him was alive at the time of his death. Concluding that this result was not inconsistent with the policies underlying § 1983, the Court held that the action did not survive. The Court specifically declined to express any view on whether abatement based on state law would prevail in a case like the instant one in which deprivation of federal rights caused death.

The issue reached the Supreme Court again, in a different form, in *Carlson v.*

*Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). *Carlson* was a damages action against federal officials implied directly from the Constitution under the rule of *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The suit was brought by a mother on behalf of the estate of her deceased son, alleging that defendants were aware of the deceased's chronic asthmatic condition but nonetheless kept him in an institution without adequate medical facilities and failed to give him proper attention after an asthmatic attack, which caused death. These allegations are very similar to those made by plaintiff in the instant case.

The Court decided that a uniform federal rule was required to achieve the *Bivens* policies of deterring federal officials from infringing federal constitutional rights, and held that whenever a state survival statute would abate the action brought against defendants whose conduct results in death, the federal common law permits survival of the action. 446 U.S. at 24, 100 S.Ct. at 1475. The Court distinguished *Robertson v. Wegmann* on the ground that there the plaintiff's death was not caused by the acts of the defendants on which the suit was based.

■ After *Robertson* and *Carlson*, then, state law governs the survivability of § 1983 actions, but a federal rule of survival supercedes any state law requiring abatement in an action where the acts of the defendants caused the death of the injured party. This seems to be true of both § 1983 suits against state officials, and *Bivens* suits against federal personnel. The court in *Robertson* stated that a "state official contemplating illegal activity must always be prepared to face the prospect of a § 1983 action being filed against him." 436 U.S. at 592, 98 S.Ct. at 1996. If a state rule, barring suit where the defendant's acts resulted in the death of the injured party, were allowed to prevail, a state official contemplating such severe conduct would face no deterrent whatsoever. Such a result would clearly be inconsistent with the § 1983 policy of deterring constitutional deprivations by state officials.

■ Virginia law does provide for the survival, in the form of a wrongful death action, of a claim of a decedent whose death was caused by the wrongful act or default of the defendant. The suit is to be brought by and in the name of the personal representative of the deceased. Va.Code § 8.01–50 (1977 repl. vol.). Plaintiff, having qualified as the administratrix of the deceased's estate, is entitled to pursue his constitutional claims against these defendants.[1]

The defendants' third ground claimed to warrant dismissal concerns the scope of damages available in a § 1983 action based on constitutional deprivations which caused the decedent's death. Plaintiff in this case seeks compensatory damages for the claimed deprivation of deceased's rights and punitive damages. Defendants argue that neither are recoverable under the Virginia statute which provides for the survival of a wrongful death action.

■ The Virginia statute provides that wrongful death recoveries are to be distributed to the members of certain classes of beneficiaries. Va.Code § 8.01–53. The Virginia rule is that the personal representative sues as trustee for these statutory beneficiaries and not for the benefit of the decedent's estate. The damages specified in § 8.01–52 as recoverable are designed to compensate the beneficiaries for the losses they suffer as a result of the decedent's death, and not to accumulate an estate for the decedent. *Cassady v. Martin*, 220 Va. 1093, 266 S.E.2d 104 (1980); *Wilson v. Whittaker*, 207 Va. 1032, 154 S.E.2d 124 (1967). *See Hewitt v. Firestone Tire & Rubber Co.*, 490 F.Supp. 1358 (E.D.Va.1980). The court in *James v. Murphy, supra*, allowed the state wrongful statute to prescribe the scope of the remedies available under § 1983. Since the statute provided only for punitive damages, and not for compensato-

1. After *Grady* and *Robertson*, the defendants' contention that this Court must look only to the common law of Virginia in the survivability inquiry, and not its statutory rules, is wholly without merit.

ry damages for either the injury sustained by the decedent or by the survivors, a complaint which requested only compensatory recovery was held to be defective.

■ The Virginia statute, however, would apparently deny any recovery for the deprivation of the deceased's constitutional rights. Because this rule effectively calls for the abatement of the decedent's constitutional claims, and would allow the personal representative to obtain compensation only for whatever loss was suffered by the beneficiaries, it is inconsistent with the compensatory and deterrent policies behind § 1983. *See Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). *Robertson* and *Carlson* require this court to allow the decedent's claims based on violations of his civil rights which caused his death to survive him and award the plaintiff compensation for this deprivation if she succeeds on the merits.

■ The same is true of the punitive damages issue. The Virginia wrongful death statute does not permit an award of punitive damages to the decedent's representative. *Wilson v. Whittaker, supra; Hewitt v. Firestone Tire & Rubber Co., supra.* Punitive damages are possible in an appropriate case under § 1983, however, where the defendants have acted with the malicious intention to deprive a person of his rights. *Haywood v. Ball,* 634 F.2d 740 (4th Cir. 1980); *Zarcone v. Perry,* 572 F.2d 52 (2d Cir. 1978); *Paton v. La Prade,* 524 F.2d 862 (3d Cir. 1975); *Stolberg v. Members of Bd. of Tr. for State Col. of Conn.,* 474 F.2d 485 (2d Cir. 1973). *Cf. Carey v. Piphus, supra,* 435 U.S. at 257 n.11, 98 S.Ct. at 1049 n.11. Since the exclusion of a punitive award under the Virginia wrongful death statute is inconsistent with the § 1983 purpose of deterring this sort of conduct, *Robertson* and *Carlson* dictate that the decedent's claim for punitive damages must also survive his death and that the Virginia rule not be used to limit the remedies normally available in a § 1983 action based on acts of the defendants which caused the death of the injured party.

■ The defendants are, in the Court's view, correct, however, in their contention that a § 1983 action cannot be maintained against them in their official capacities if the damages recoverable from them would come from the state treasury. The Eleventh Amendment bars suit in federal court against an unconsenting state either by her own citizens or by citizens of another state where the liability the parties seek to enforce must be paid from public funds. Section 1983 does not abrogate this immunity of the states. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Any action for damages against the defendants in this case which would come from state monies is not maintainable in this court. The defendants are, however, amenable to suit individually for injunctive and monetary relief. *Quern v. Jordan, supra; Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

The defendants' motion to dismiss must be denied, except to the extent that plaintiff seeks damages payable from the state treasury.

An appropriate order will issue.