988 P.2d 134

Delores BADIA, individually and as personal representative of the Estate of Ida Perez, and on behalf of Natalie Avilez, Danielle Marcus, and Belen Murrillo, natural children of Ida Perez, Plaintiff/Appellant,

v.

CITY OF CASA GRANDE, a political subdivision of the State of Arizona; Kent A. Myers and Angela Myers, husband and wife; John Tena and Monica Tena, husband and wife; G.M. Clark and Tammy Clark, husband and wife; Dennis Mercer, Defendants/Appellees.

No. 2 CA–CV 98–0122.

Court of Appeals of Arizona,
Division 2, Department A.

March 16, 1999.

Review Denied Oct. 26, 1999.

Surrano & Massey, P.C. By Charles J. Surrano and John N. Wilborn, Phoenix, Attorneys for Plaintiff/Appellant.

Mesch, Clark & Rothschild, P.C., By Tom R. Clark and Scott H. Gan, Tucson, Attorneys for Defendants/Appellees.

*OPINION*

PELANDER, Presiding Judge.

¶ 1 Plaintiff/appellant Delores Badia, individually and on behalf of the estate and children of her deceased daughter, Ida Perez, appeals from a summary judgment granted in favor of defendants/appellees the City of Casa Grande; Kent Myers, Casa Grande City Manager; and Officers John Tena, G.M. Clark, and Dennis Mercer of the Casa Grande Police Department. We affirm.

## BACKGROUND

¶ 2 "On appeal from a grant of summary judgment, we view all facts and reasonable inferences therefrom in the light most favorable to the party against whom judgment was entered." *Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, ¶ 2, 965 P.2d 47, ¶ 2 (App.1998). At approximately 3:00 a.m. on October 17, 1993, Perez was murdered by her boyfriend, Julio Murrillo. Apparently Murrillo later was convicted of second-degree murder for the slaying. Officer Tena had arrested Perez at around 9:45 p.m. on the previous evening, after Officer Mercer had seen her back her truck into a parked vehicle. Murrillo and Gloria Harrison, a relative of Perez, were passengers in the truck at the time.

¶ 3 When Officer Tena approached Perez to investigate what had happened, he smelled a faint odor of alcohol coming from her and observed that she had watery, bloodshot eyes and mumbled speech. Perez initially gave a false first name to Officer Tena and, after she admitted having done so, Tena arrested her for "false reporting." He handcuffed her and placed her in Officer Mercer's vehicle. After Tena walked away, Perez slipped one hand out of the handcuffs and began banging the patrol car windows with the cuffs. When Tena removed Perez from the vehicle, she became physically combative and kicked him. Tena and Mercer then put the handcuffs back on her and "hobbled" her.[1] They placed her face-down in the back seat of

---

1. Officer Tena described a "hobble" as a restraint that secures the ankles and connects them to the handcuffs, with the "legs up against their buttock so they can't kick while their arms will remain behind their back."

Mercer's vehicle, and he transported her to the police station.

¶ 4 During the drive, Perez was "irritated with Officer Tena" and called him names. At the police station, Sergeant Ellsworth, the "officer in charge," met Mercer and Perez in the parking lot, and the officers removed the hobble but kept Perez handcuffed. They took Perez to an interview room, where Ellsworth talked to her for a few minutes until she "settled down." When Tena came in, however, she again started to call him names. After Ellsworth returned to the room and talked to Perez for a while, she agreed to cooperate with the rest of the investigation and processing. Ellsworth testified in his deposition that he observed that Perez had been drinking, but that she was oriented and conversant. He did not "remember a strong odor of alcohol" and did not believe she was "snockered or falling-down drunk."

¶ 5 Tena testified in his deposition that while Perez was in custody, a dispatcher ran a "driver's license check" through the state motor vehicle division and determined that Perez's license was suspended, but that she did not have a prior conviction for driving under the influence of alcohol (DUI). The police also ran a computer check on Perez's name "for her physical information, Social Security number, [and] date of birth," and ran a "warrants check" through a different state computer system. After reviewing the information that was obtained and discussing the earlier accident and Perez's conduct at the scene, Ellsworth and Tena charged Perez with various misdemeanor offenses, including driving with a suspended license, DUI, and resisting arrest.

¶ 6 At some point during the evening, Perez agreed to take an "intoxilyzer test." Tena transported her to the Pinal County substation for that test because the Casa Grande Police Department did not have an intoxilyzer machine. When they arrived at the substation, however, Perez refused to take the test and, instead, signed an informed consent form acknowledging that she knew the consequences of refusing the test. Tena completed his paperwork and "waited for someone to pick her up."

¶ 7 Harrison testified in her deposition that a woman dispatcher from the substation had telephoned to inform her that Perez would be released. According to Harrison, the dispatcher stated that Perez wanted Harrison to pick her up and did not want Harrison to bring Murrillo with her. Although Harrison related that information to Murrillo, he accompanied Harrison to the substation. Upon their arrival there, Harrison spoke through a plexiglass window with the same dispatcher with whom she had spoken by telephone earlier, who immediately released Perez to Harrison. Murrillo was with Harrison and, according to Harrison, Perez was intoxicated but "acting okay" at that time. As the three of them started to leave the substation, but while they were still inside, Perez pushed Murrillo after he made a derogatory comment, and he shoved her back. Perez almost lost her balance but did not fall down. According to Harrison, Perez and Murrillo also argued and shoved one another outside in the parking lot after they had left the substation.

¶ 8 The county substation dispatcher, who was not identified or deposed in this case, released Perez sometime before 1:00 a.m. Harrison drove Perez and Murrillo directly from the substation to a convenience store because Perez wanted to purchase more beer. Harrison had not been drinking at all that night. Perez and Murrillo then resumed their drinking. Harrison testified that at some point later Perez told her that she (Perez) "had told the police that night that she did not want [Murrillo] to pick her up" and that he had "threatened to kill her a month earlier." Murrillo stabbed Perez to death at her apartment within approximately two hours after she was released.

¶ 9 In her amended complaint in this action, plaintiff alleged that defendants "knew or should have known of a pattern of domestic violence perpetrated against" Perez by Murrillo at the time they released her, and that the police department "failed to adequately protect" Perez from Murrillo "by treating her domestic violence complaints with less priority."[2] Plaintiff claimed, inter

---

2. Although plaintiff's original complaint alleged that defendant Officer Clark "had possession" of

alia, that the individual police officers and the City "deprived Ms. Perez of her constitutional rights to equal protection under the law, under the Fourteenth Amendment to the United States Constitution," in violation of 42 U.S.C. § 1983. In a separate negligence count, plaintiff also alleged that defendants had "established a special relation with Ida Perez by acts including arresting and/or detaining her knowing or having reason to know that she was intoxicated," "had a duty to take reasonable precautions" for her safety, had negligently breached that duty by releasing her to Murrillo, and had thereby proximately caused her death. Plaintiff sought compensatory and punitive damages and an award of attorneys' fees.

¶ 10 In their motion for summary judgment, defendants argued that plaintiff had failed to present any evidence of an unconstitutional policy or custom entitling her to relief under § 1983; that the individual officers were shielded from § 1983 liability by qualified immunity; and that plaintiff had failed to introduce evidence that the officers had been grossly negligent, required by A.R.S. § 12–820.02(A) in order to establish their liability. In her response, plaintiff claimed for the first time that defendants had violated § 1983 by depriving Perez of her due process rights under the Fourteenth Amendment by releasing her to Murrillo.[3] She also claimed for the first time that Officers Mercer and Tena had used excessive force in violation of § 1983 when they "hobbled" and "hogtied" Perez and placed her face-down in the patrol car. After the parties stipulated to a change of venue from Pinal County to Pima County, the trial court granted defendants' motion. This appeal followed.

information that Murrillo previously had perpetrated "domestic violence" against Perez and "had recently threatened to kill" her, neither plaintiff's amended complaint nor the rest of the record refers to Officer Clark at all.

3. Although we question the propriety of raising that claim at such a late stage of the proceedings, defendants had an opportunity to respond and did not object that the claim had been untimely raised. Moreover, the trial court ruled on the claim, although mislabeling it as "Equal Protec-

## DISCUSSION

¶ 11 Summary judgment is proper "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme School v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). "On appeal from a summary judgment, we must determine de novo whether there are any genuine issues of material fact and whether the trial court erred in applying the law." *Bothell,* 192 Ariz. at ¶ 8, 965 P.2d at ¶ 8. We also review de novo statutory interpretation issues and constitutional claims, *Little v. All Phoenix South Community Mental Health Center, Inc.,* 186 Ariz. 97, 919 P.2d 1368 (App.1995), and will affirm the trial court's ruling if it is correct on any ground. *Glaze v. Marcus,* 151 Ariz. 538, 729 P.2d 342 (App.1986).

### I. Section 1983 Due Process Claim

¶ 12 Plaintiff first contends the trial court "[f]ailed to address [her] § 1983 due process claim under the explicit exception ... for incarceration and commitment" recognized in *DeShaney v. Winnebago County Dep't of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).[4] That "exception," however, does not apply here.

¶ 13 In *DeShaney,* the Supreme Court held that government agents had no duty under the due process clause to affirmatively protect a child from his father's violence, even though state and local authorities were aware of ongoing abuse and failed to take steps to remove the child from the father's custody. The Court noted that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty,

tion/Special Relationship." We therefore address plaintiff's arguments relating to this claim on appeal.

4. The trial court did address the *DeShaney* case in its ruling, albeit under an incorrect label of "Equal Protection." Although major portions of plaintiff's original and amended complaints focused on her equal protection claims, she has abandoned any such claims on appeal.

and property of its citizens against invasion by private actors." *Id.* at 195, 109 S.Ct. at 1003, 103 L.Ed.2d at 258. Rather, according to the Court, that clause is intended to limit the "State's power to act, not as a guarantee of certain minimal levels of safety and security." *Id.*

¶ 14 The Court recognized an exception to those principles, however, noting that the state has an affirmative duty to "assume some responsibility for [the] safety and general well-being" of a person in the state's custody. *Id.* at 200, 109 S.Ct. at 1005, 103 L.Ed.2d at 261. The Court explained the rationale for that exception as follows:

> [W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs ... it transgresses the substantive limits on state action set by the ... Due Process clause. The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf. In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf through incarceration, institutionalization, or other similar restraint of personal liberty-which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

*Id.* at 200, 109 S.Ct. at 1005–06, 103 L.Ed.2d at 261–62 (citations omitted).

¶ 15 Plaintiff asserts that the custodial exception applies here because the Casa Grande Police Department took custody of Perez by arresting, transporting, and confining her against her will. Perez's death, however, occurred after she had been released from custody, and defendants' actions had neither so "restrain[ed][her] liberty that it render[ed][her] unable to care for [her]self" nor limited her "freedom to act on [her] own behalf" once she was released. *Id.* Perez's situation is analogous to that of Joshua De-

Shaney, a victim of prior child abuse who had been taken into the state's custody temporarily but was then released to his father, whose subsequent beatings of Joshua caused permanent brain damage. Although Perez's freedom to act was limited while she was in custody, she was no longer in custody when Murrillo murdered her, at which time defendants no longer had any constitutional duty to ensure her safety and well-being. *DeShaney.* See also *Henke v. Superior Court,* 161 Ariz. 96, 101, 775 P.2d 1160, 1165 (App.1989) (based on *DeShaney's* holding that "only a person in the state's custody can maintain a section 1983 claim for injuries caused by a third party," court ordered dismissal of § 1983 claim against parole officer who allegedly failed to properly supervise and control parolee).

¶ 16 Thus, *DeShaney* negates rather than supports plaintiff's claim. Moreover, none of defendants' alleged acts or omissions placed Perez in any worse position than she had been in when the officers arrested and took her into custody. See *Gazette v. City of Pontiac,* 41 F.3d 1061, 1065 (6th Cir.1994) ("The final part of the *DeShaney* analysis requires us to ask whether the City or the police officers rendered [the victim] any more vulnerable to the danger she was already in by their actions."). She had been with Murrillo and Harrison at that time, and they later picked her up at the substation. There is no evidence that Perez refused to go with Murrillo or expressed any concern about doing so when she was released. Assuming Perez had told "the police" earlier that night that she did not want Murrillo to pick her up and that he had threatened to kill her a month earlier, as Harrison testified, and even assuming that hearsay evidence is admissible, it does not establish that defendants rendered Perez more vulnerable to danger by releasing her or permitting her to go with Harrison and Murrillo when they picked her up. See, e.g., *Armijo by and through Chavez v. Wagon Mound Public Schools,* 159 F.3d 1253, 1263 (10th Cir.1998) ("[I]f the danger to the plaintiff existed prior to the state's intervention, then even if the state put the plaintiff back in that same danger, the state would not be liable because it could not

have created a danger that already existed."); *Penilla v. City of Huntington Park,* 115 F.3d 707 (9th Cir.1997), cert. denied, *Settles v. Penilla,* 524 U.S. 904, 118 S.Ct. 2059, 141 L.Ed.2d 137 (1998) (§ 1983 claim arises if state actor's affirmative conduct places plaintiff in danger and officer acts with deliberate indifference to plaintiff's safety); *Estate of Stevens v. City of Green Bay,* 105 F.3d 1169, 1177 (7th Cir.1997) (no liability under § 1983 when plaintiff failed to show that state "cut off all avenues of aid without providing a reasonable alternative" or left decedent in situation more vulnerable to danger than he had been before police involvement).[5]

¶ 17 Plaintiff further contends that she "presented uncontroverted evidence that [the acts of the police in releasing Perez], in addition to many others, were in gross deviation from generally accepted police customs and practices" and "direct[ly] and proximate[ly] cause[d]" Perez's death. Contrary to plaintiff's argument, those allegations, albeit supported by opinions from her police procedures expert, neither establish an "affirmative duty toward Ms. Perez, as an arrestee" nor precluded summary judgment here. The issue of whether a duty exists is a question of law for the court, unaffected by expert opinion. See *Riddle v. Arizona Oncology Services,* 186 Ariz. 464, 924 P.2d 468 (App.1996); *Hafner v. Beck,* 185 Ariz. 389, 916 P.2d 1105 (App.1995). Defendants had no constitutional duty to protect Perez after releasing her from custody, DeShaney, and any alleged acts or omissions while she was in custody, therefore, are of no consequence with respect to her due process claim. Because defendants did not "deprive[ ] [Perez] of [any] right 'secured by the Constitution and laws of the United States,'" defendants were entitled to judgment as a matter of law on plaintiff's § 1983 due process claim. *Martinez v. California,* 444 U.S. 277, 284, 100 S.Ct. 553, 558, 62 L.Ed.2d 481, 488

(1980), quoting *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433, 439 (1979).

## II. Section 1983 Excessive Force Claim

¶ 18 Plaintiff next contends the trial court erred in granting summary judgment on her claim that the officers violated the Fourth Amendment and § 1983 by using excessive force in arresting Perez.[6] The trial court ruled that plaintiff introduced "sufficient evidence, including expert testimony, to withstand a directed verdict on this issue," but concluded that, "as a matter of law, this cause of action does not survive the death of the defendant [sic], unless the excessive force was the cause of death." Contrary to plaintiff's contention that the trial court "muddled" the issues of survival and damages, the court noted specifically that, although the cause of action might survive under A.R.S. § 14–3110, the only possible damages would be for Perez's pain and suffering, which the statute expressly precludes.

¶ 19 Section 1983 itself does not provide specific remedies or address the survivability of actions for civil rights violations. Pursuant to 42 U.S.C. § 1988(a), when federal law does not provide suitable remedies for such violations, courts are "to turn to 'the common law, as modified and changed by the constitution and statutes of the [forum] State' as long as these are 'not inconsistent with the Constitution and laws of the United States.'" *Robertson v. Wegmann,* 436 U.S. 584, 588, 98 S.Ct. 1991, 1994, 56 L.Ed.2d 554, 560 (1978), quoting 42 U.S.C. § 1988. Courts therefore look to state statutes in defining the remedies available under § 1983. In doing so, however, the court must determine "whether application of state law 'would be inconsistent with the federal policy underlying the cause of action under consideration.'" *Robertson,* 436 U.S. at 590, 98 S.Ct. at 1995, 56 L.Ed.2d at 561, quoting *Johnson v. Railway Express*

---

5. Cases that have recognized potential liability under § 1983 pursuant to the so-called "state-created danger" rule are factually distinguishable and inapposite. See, e.g., *Davis v. Brady,* 143 F.3d 1021 (6th Cir.1998), cert. denied, 525 U.S. 1093, 119 S.Ct. 851, 142 L.Ed.2d 704 (1999); *Kneipp v. Tedder,* 95 F.3d 1199 (3d Cir. 1996).

6. Again, plaintiff did not allege that claim in her original or amended complaint, but raised it for the first time in her response to defendants' motion for summary judgment. Nonetheless, the trial court ruled on this claim and defendants did not object to the claim as untimely.

*Agency, Inc.,* 421 U.S. 454, 465, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295, 304 (1975).

¶ 20 The fundamental policies underlying § 1983 are to deter unconstitutional acts committed under color of state law and to compensate the victims of such acts. *Robertson; Bell v. City of Milwaukee,* 746 F.2d 1205 (7th Cir.1984). Pursuant to Arizona's survival statute, every cause of action, with certain exceptions not applicable here, survives "the death of the person entitled thereto or liable therefor," but damages for the decedent's pain and suffering "shall not be allowed." A.R.S. § 14–3110. See *Harrington v. Flanders,* 2 Ariz.App. 265, 407 P.2d 946 (1965) (holding provision of survival statute prohibiting damages for pain and suffering on death of person injured constitutional). Plaintiff argues that disallowing damages for Perez's pain and suffering is inconsistent with the policy of § 1983, and that § 14–3110 should not, therefore, be applied to bar recovery on her claim of excessive force in this case.

¶ 21 In *Robertson,* the original plaintiff died of causes unrelated to his § 1983 claims while his action was pending. The Supreme Court held that a Louisiana statute that permitted certain actions to survive only in favor of a spouse, children, parents, or siblings, none of whom existed in that case, would not undermine the policies of § 1983. *Robertson.* The Court found "nothing in [§ 1983] or its underlying policies to indicate that a state law causing abatement of a particular action should invariably be ignored in favor of a rule of absolute survivorship." *Id.* at 590, 98 S.Ct. at 1995, 56 L.Ed.2d at 561. Contrary to plaintiff's argument, we view *Robertson* as persuasive authority against her position.

¶ 22 Plaintiff relies on several cases in which federal courts did not apply state statutes that would have barred certain damages or recovery in situations where the constitutional violations resulted in death. See *Berry v. City of Muskogee,* 900 F.2d 1489, 1507 (10th Cir.1990) (state wrongful death and survival actions not sufficient to "serve the deterrent function central to the purpose of § 1983" where death is result of unconstitutional conduct); *Bass by Lewis v. Wallenstein,* 769 F.2d 1173, 1190 (7th Cir.1985) (damages for decedent's pain and suffering between injury and death may be recovered where "constitutional deprivation sought to be remedied has caused death"); *Bell* (court declined to apply statutes that would have prevented any recovery for loss of life); *McFadden v. Sanchez,* 710 F.2d 907, 911 (2nd Cir.1983) ("State law that would preclude a claim for punitive damages in a case like the present one [where unconstitutional conduct caused death] is manifestly 'inconsistent' with federal law within the meaning of § 1988."). Those cases, however, are factually distinguishable and inapposite here.

¶ 23 In *Robertson,* the Court specifically noted: "the fact that a particular action might abate surely would not adversely affect § 1983's role in preventing official illegality, at least in situations in which there is no claim that the illegality caused the plaintiff's death." *Robertson,* 436 U.S. at 592, 98 S.Ct. at 1996, 56 L.Ed.2d at 562. Because the alleged constitutional violation here did not result in Perez's death or, for that matter, any known physical injury, the foregoing cases upon which plaintiff relies are inapplicable. Similarly, § 14–3110 does not undermine the deterrent purposes of § 1983. Law enforcement officers who use excessive force are likely to cause injuries resulting in special and general damages that would survive the victim's death, such as medical expenses, lost wages, loss of earning capacity, and loss of consortium. Use of force that is severe enough to cause death, of course, potentially would expose the defendants to liability under § 1983 and/or Arizona's wrongful death statutes, A.R.S. §§ 12–611 through 12–613. See *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); cf. *Havier v. Partin,* 16 Ariz.App. 265, 492 P.2d 761 (1972). Moreover, it is patently absurd to suggest that officers are likely to engage in unconstitutional conduct based on the assumption that the victim will die within a short period of time, thereby freeing them from liability for pain and suffering damages.

¶ 24 Inasmuch as Perez's death in this case did not result from defendants'

alleged use of excessive force, § 14–3110 neither frustrates nor is inconsistent with the policies and purposes of § 1983. See *Garcia v. Superior Court*, 42 Cal.App.4th 177, 49 Cal.Rptr.2d 580 (1996) (holding that California statute precluding recovery for decedent's pain and suffering applied to § 1983 action and did not undermine policy or purpose of federal law). But see *Williams v. City of Oakland*, 915 F.Supp. 1074 (N.D.Cal. 1996) (holding pain and suffering damages, which did not survive under California law, were available to survivors in § 1983 action based on officers' alleged use of excessive force, when deceased plaintiff died more than a year later of causes unrelated to incident). Accordingly, the trial court did not err in concluding that any damages arguably caused by defendants' alleged use of excessive force did not survive Perez's death and in consequently dismissing that aspect of plaintiff's § 1983 claim. We need not and, therefore, do not decide whether § 14–3110 would preclude damages in a § 1983 action for a decedent's pain and suffering if the victim were to die as a result of a constitutional violation.

### III. Punitive Damages Claim

 ¶ 25 The trial court ruled that the defendant officers "have statutory immunity from punitive damages pursuant to A.R.S. § 12–820.04." Plaintiff contends, however, that the individual defendants are liable for punitive damages under § 1983 because they "acted recklessly under federal law." Contrary to the trial court's ruling, § 12–820.04 would not necessarily preclude a punitive damage award under § 1983 against those who commit civil rights violations. See *Bass by Lewis; McFadden; Larson v. Wind*, 542 F.Supp. 25 (N.D.Ill.1982); *O'Connor v. Several Unknown Correctional Officers*, 523 F.Supp. 1345 (E.D.Va.1981). Because the trial court properly granted summary judgment for defendants on all of plaintiff's § 1983 claims, however, she is not entitled to punitive damages. See *Duncan v. Wells*, 23 F.3d 1322 (8th Cir.1994). Moreover, the record in this case would not permit a reasonable trier of fact to find that the officers acted with "evil motive or intent" or "reckless or callous indifference to [Perez's] feder-

ally protected right[ ]," a prerequisite to a punitive damage award for a federal civil rights violation. *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632, 651 (1983). See also *Coleman v. Rahija*, 114 F.3d 778 (8th Cir.1997), and cases cited therein.

### IV. State Law Claims

¶ 26 Appellant next contends numerous issues of material fact should have precluded summary judgment on her state law claim that the officers were grossly negligent in processing and disposing of the charges against Perez, releasing her, and permitting her to leave the substation with Murrillo. Section 12–820.02(A)(1), A.R.S., provides that "[u]nless a public employee acting within the scope of the public employee's employment intended to cause injury or was grossly negligent, neither a public entity nor a public employee is liable for ... [t]he failure to make an arrest or the failure to retain an arrested person in custody." Thus, plaintiff had to present sufficient facts to support a finding or reasonable inference that the officers' alleged acts or omissions on the night in question were at least grossly negligent.

 ¶ 27 Whether gross negligence exists is generally a fact question for the jury, but it may be resolved on summary judgment if "no evidence is introduced that would lead a reasonable person to find gross negligence." *Walls v. Arizona Dept. of Public Safety*, 170 Ariz. 591, 595, 826 P.2d 1217, 1221 (App.1991); see also *Orme School.* The evidence "must be more than slight and may not border on conjecture." *Walls*, 170 Ariz. at 595, 826 P.2d at 1221. To establish gross negligence, the claimant essentially must show wanton misconduct that "is flagrant and evinces a lawless and destructive spirit." *Scott v. Scott*, 75 Ariz. 116, 122, 252 P.2d 571, 575 (1953). See also *Williams v. Thude*, 188 Ariz. 257, 934 P.2d 1349 (1997); *Luchanski v. Congrove*, 193 Ariz. 176, 971 P.2d 636 (App. 1998). As the court in *Walls* stated:

A party is grossly or wantonly negligent if he acts or fails to act when he knows or has reason to know facts which would lead a reasonable person to realize that his

conduct not only creates an unreasonable risk of bodily harm to others but also involves a high probability that substantial harm will result.

*Walls,* 170 Ariz. at 595, 826 P.2d at 1221.

■ ¶ 28 In this case, the trial court found:

[t]here is no proof that the officers on duty that night had any actual knowledge of the violent relationship between Ms. Perez and Mr. Murrillo; moreover, there is no evidence that those officers actually saw either Mr. Murrillo's alleged intoxication or the alleged fight in the parking lot when Mr. Murrillo appeared to pick her up. Therefore, they cannot be charged with gross negligence for releasing her to him.

In challenging that ruling, plaintiff contends "[t]he officers and their agents were presented with a multitude of facts from which they knew or should have known presented a high risk of physical harm to Ida Perez," and that "there is abundant evidence which would lead a reasonable person to find gross negligence from the police's failure 'to serve and protect' " Perez. She also asserts that the trial court erroneously applied an "objective/actual knowledge standard ... without regard to what a 'reasonable person' would have known." We find plaintiff's arguments unpersuasive.

■ ¶ 29 Relying on her toxicology expert's opinion that Perez's blood alcohol level was between .24 and .26 percent when she left the substation, plaintiff contends defendants were grossly negligent in releasing her in that condition. Plaintiff also relies on her police procedures expert's report, in which he opined that the police department and defendant officers grossly violated "generally accepted police custom and practice" in several respects, proximately causing Perez's death.[7] Neither the expert opinions nor the factual allegations upon which they are based, however, create a genuine issue of material fact on plaintiff's gross negligence claim in this

case. The record does not establish, nor could a trier of fact reasonably infer, that Perez's sobriety level or defendants' other alleged violations of police custom and practice proximately caused Murrillo to attack Perez, which resulted in her death. Sheer speculation is insufficient to establish the necessary element of proximate cause or to defeat summary judgment. See *Flowers v. K–Mart Corp.,* 126 Ariz. 495, 616 P.2d 955 (App.1980); *Shaner v. Tucson Airport Auth., Inc.,* 117 Ariz. 444, 573 P.2d 518 (App.1977).

■ ¶ 30 Moreover, the police procedures expert's opinions are neither binding nor determinative. Expert opinions, without more, do not necessarily render a plaintiff's allegations of gross negligence triable issues of fact. See *Kemp v. Pinal County,* 13 Ariz. App. 121, 474 P.2d 840 (1970). That is particularly so when, as here, the expert's opinions on the issues of gross negligence and causation are largely conjectural and conclusory. See *Florez v. Sargeant,* 185 Ariz. 521, 526, 917 P.2d 250, 255 (1996) (expert "affidavits that only set forth ultimate facts or conclusions of law can neither support nor defeat a motion for summary judgment").

¶ 31 In support of her gross negligence claim, plaintiff also contends, without support in the record, that the police officers witnessed the "physical altercation" between Perez and Murrillo at the substation immediately after she had been released and failed to intervene. Harrison testified that a police officer may have been "in back or walking with" Perez when Harrison and Murrillo came to pick her up, but could not actually recall any officer being there. In fact, Harrison did not recall seeing any police officers at the substation and testified that she "would be lying" to suggest otherwise. Thus, contrary to plaintiff's contention, there is no evidence that any of the defendant officers actually saw any altercation between Perez and Murrillo. Their failure to intervene in an incident of which they were unaware,

---

7. The officers' alleged use of excessive force against Perez, which the police procedures expert criticized, was totally unrelated to her death. Because proximate cause is lacking, there can be no liability for wrongful death based on the excessive force theory. See *Mullen v. Posada Del*

*Sol Health Care Center,* 169 Ariz. 399, 819 P.2d 985 (App.1991). Moreover, as noted earlier, a claim for Perez's pain and suffering, the only damages arguably caused by the excessive force, did not survive her death. A.R.S. § 14–3110.

therefore, does not constitute gross negligence.

¶ 32 In addition, there is no evidence that Perez informed the police when Murrillo arrived with Harrison that she did not want to leave with him. Although Harrison testified that an unidentified dispatcher at the county substation had told her by telephone that Perez had asked that Harrison come without Murrillo to pick her up, there is no evidence that the dispatcher shared that information with any of the officers either before or after Murrillo arrived with Harrison. Nor is there evidence that the dispatcher had any relationship to or contact with the defendants.

¶ 33 Viewing all the evidence in the light most favorable to plaintiff, we conclude that a reasonable trier of fact could not find gross negligence in this case. Plaintiff failed to present any evidence that defendants "act[ed] or fail[ed] to act" knowing or objectively having reason to know that their actions "create[d] an unreasonable risk of bodily harm to [Perez] ... [and] involve[d] a high probability that substantial harm [would] result." *Walls*, 170 Ariz. at 595, 826 P.2d at 1221. In addition, based on this record, a reasonable trier could not find that defendants' alleged acts or omissions proximately caused Perez's death. Therefore, the trial court properly granted summary judgment for defendants on plaintiff's state law claim.

## DISPOSITION

¶ 34 The trial court's order granting summary judgment for defendants on all claims is affirmed. In view of our affirmance, plaintiff is not entitled to attorneys' fees below or on appeal.

CONCURRING: WILLIAM E. DRUKE, Chief Judge, and M. JAN FLÓREZ, Judge.