FILED BY CLERK

FEB -9 2005

COURT OF APPEALS
DIVISION TWO

IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| DAVID MARTIN, an individual, | ) | 2 CA-CV 2004-0092 |
| | ) | DEPARTMENT A |
| Plaintiff/Appellant, | ) | |
| | ) | O P I N I O N |
| v. | ) | |
| | ) | |
| MATT SCHROEDER and JANE DOE | ) | |
| SCHROEDER, husband and wife; | ) | |
| GRANT SCHROEDER and CATHY | ) | |
| SCHROEDER, husband and wife, | ) | |
| | ) | |
| Defendants/Appellees. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C 20025689

Honorable Richard S. Fields, Judge

AFFIRMED

Grabb & Durando, P.L.C.
  By Robert M. Grabb, Nann Novinski Durando and
  Stephen Kimble                                                                          Tucson
                                                        Attorneys for Plaintiff/Appellant

Slutes, Sakrison & Hill, P.C.
  By David E. Hill and Diana L. Kanon

                                                                                         Tucson
                                                     Attorneys for Defendants/Appellees

H O W A R D, Presiding Judge.

¶1    Appellant David Martin challenges the trial court's denial of his motion for summary judgment and grant of appellees Grant and Cathy Schroeder's motion for summary judgment in Martin's personal injury action against the Schroeders. Martin argues the trial court erred by finding that the Schroeders did not owe a common law duty to Martin and had not violated 18 U.S.C. § 922(d) when they gave a gun to their adult son, Matt Schroeder. Because the trial court correctly decided these issues, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2    We view the facts and all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Link v. Pima County*, 193 Ariz. 336, ¶ 12, 972 P.2d 669, 673 (App. 1998). While in high school, Grant and Cathy Schroeders' son, Matt, used marijuana regularly. When the Schroeders discovered his marijuana use, they sent Matt for treatment both in and out of state. Following Matt's completion of drug treatment, the Schroeders continued to monitor him for marijuana use. The Schroeders required Matt to take random urinalysis tests to detect drugs and the tests showed that Matt was no longer using marijuana.

¶3    Matt moved out of the Schroeders' home at the age of eighteen, and subsequently married and had a child. Matt then became employed as a security guard. Because he was not yet twenty-one years old and could not legally purchase a handgun from a dealer himself, he asked the Schroeders to purchase a gun for him so he could receive an increase in pay. Cathy Schroeder purchased the gun and gave it to Matt as a present. Despite Matt's use of marijuana in the past, Cathy Schroeder believed that Matt was no longer using marijuana when she purchased the handgun for him. After receiving the handgun, Matt was

2

to receive at least two firearm training sessions, one from the sheriff's department and one from his employer.

¶4        Approximately nine months after the Schroeders gave the gun to Matt, Martin and Matt were smoking marijuana together and Matt accidentally shot Martin in the head, injuring him.  Martin sued the Schroeders, alleging they were liable for his injuries because they had purchased the gun that was used in the shooting and had given it to Matt, knowing he was a drug abuser.  The trial court granted summary judgment in favor of the Schroeders and denied Martin's motion for summary judgment.

## NEGLIGENT ENTRUSTMENT[1]

¶5        Martin first argues that the trial court erred by denying his motion for summary judgment on the issue of duty.  But, generally, the denial of a motion for summary judgment is not appealable, and not subject to review after judgment.  *Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, ¶ 7, 965 P.2d 47, 50 (App. 1998).  Martin has not asserted any considerations mandating a review of the denial of his motion, and we therefore decline to do so.

¶6        Martin next argues that the trial court erred by concluding that the Schroeders did not owe him any common law duty and granting them summary judgment.  We review the grant of summary judgment de novo.  *Link*, 193 Ariz. 336, ¶ 12, 972 P.2d at 673.  We also review the question of duty in a negligence action de novo.  *Bloxham v. Glock, Inc.*, 203 Ariz. 271, ¶ 6, 53 P.3d 196, 199 (App. 2002).

---

[1]Although the parties debate whether Restatement (Second) of Torts § 390 (1965), sets forth a "negligent entrustment" claim, we follow the lead of other courts that have stated that it does.  *See, e.g.*, *Stehlik v. Rhoads*, 645 N.W.2d 889, 895 (Wis. 2002).  And, more importantly, the label is not important to our resolution of the issue.

3

**¶7**    "The question of duty . . . is whether the relationship of the parties was such that the defendant was under an obligation to use some care to avoid or prevent injury to the plaintiff." *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 356, 706 P.2d 364, 368 (1985). As a general rule, an individual has no duty to control the acts of another, unless there is a special relationship between the individual and the actor or between the individual and the injured party. *Bloxham*, 203 Ariz. 271, ¶ 7, 53 P.3d at 199. Martin claims the special relationship arises because the Schroeders knew Matt was incompetent to own a gun, given that they knew that Matt previously had been addicted to marijuana and that he was using marijuana at the time of the incident, relying on Restatement (Second) of Torts § 390 (1965), and *Brannigan v. Raybuck*, 136 Ariz. 513, 667 P.2d 213 (1983).

**¶8**    Section 390 of the Restatement states as follows:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for the physical harm resulting to them.

In *Brannigan*, our supreme court, relying on § 390, held "that a supplier of liquor is under a common law duty of reasonable care in furnishing liquor to those who, by reason of immaturity or previous over-indulgence, may lack full capacity of self-control and may therefore injure themselves, as well as others." 136 Ariz. at 516, 667 P.2d at 216. Martin's reliance on § 390 is misplaced for several reasons.

**¶9**    First, as to Matt's prior addiction, Martin has not cited any authority for the proposition that anyone who was once addicted to marijuana is forever incompetent to own

4

a gun.[2]  We decline to so hold as a matter of law and rather conclude that knowledge of Matt's prior addiction to marijuana, without more, is not sufficient to create a special relationship with the Schroeders imposing a duty on them for Martin's benefit.

¶10        Second, as to the Schroeders' knowledge of Matt's contemporaneous marijuana use, Martin admitted at oral argument that he could only succeed on appeal if a genuine issue of fact existed as to whether Matt's drug tests taken after completion of his treatment showed that he had continued to use marijuana.  The record, however, establishes that, although Matt had been addicted to marijuana in the past, the Schroeders had sent him to treatment, he had completed the treatment program, and his urine tests after the treatment had been negative for drugs.  Since the time Matt had completed his drug treatment, he had reached the age of majority, moved out of his parents' home, married, had a child and obtained a job.  Based on the record before the trial court, to the best of the Schroeders' knowledge, Matt was not using marijuana when they gave him the gun.  Therefore, Martin has failed to raise a genuine issue of material fact concerning whether the Schroeders knew or should have known Matt was contemporaneously using marijuana.  Accordingly, we conclude Martin has failed to provide any factual basis to support a special relationship with the Schroeders based on their alleged knowledge of Matt's contemporaneous unlawful marijuana use.[3]

[2]At oral argument, Martin agreed that he was not requesting that we recognize a duty based on the Schroeders' knowledge of Matt's prior addiction.

[3]Martin stated at oral argument that he had found no cases imposing a duty on the transferor of a weapon based on contemporaneous use of marijuana.  Because Martin failed to raise a genuine issue of fact concerning the Schroeders' knowledge of Matt's contemporaneous marijuana use, we do not need to decide whether any duty exists beyond that which we recognize below based on 18 U.S.C. § 922.

5

**¶11** At oral argument, Martin stressed that Cathy Schroeder, in her deposition, had stated that she had "felt very comfortable that Matt was only doing marijuana because of the drug test that we did on him. Marijuana was the only drug that ever showed up." Martin further noted that Greg Schroeder had testified in his deposition that they had tested Matt for drugs after Matt returned from treatment. Martin interprets these statements to mean that the testing Matt had been given after he finished his treatment still showed he was using marijuana, which, Martin asserts, raises at least an issue of fact as to whether the Schroeders knew or should have known that Matt was using marijuana at the time of the transfer of the gun.

**¶12** Because Martin is the party opposing summary judgment and bears the burden of proof at trial, he was required to present evidence creating genuine issues of material fact as to each element of his case. *See Ruelas v. Staff Builders Pers. Servs., Inc.*, 199 Ariz. 344, ¶ 7, 18 P.3d 138, 140 (App. 2001). A "genuine" issue is one that a reasonable trier of fact could decide in favor of the party adverse to summary judgment on the available evidentiary record. *United Bank of Ariz. v. Allyn*, 167 Ariz. 191, 195, 805 P.2d 1012, 1016 (App. 1990). "Mere speculation" or "insubstantial doubt as to the facts" is insufficient to defeat a summary judgment motion. *Boomer v. Frank*, 196 Ariz. 55, 58, 993 P.2d 456, 459 (App. 1999), *quoting Allyn*, 167 Ariz. at 195, 805 P.2d at 1016.

**¶13** Despite Martin's contention, the context surrounding Cathy's statement clearly shows that Cathy was referring to the period of time before Matt's treatment, not after the treatment. Further, Cathy had unequivocally testified previously in her deposition that Matt's urinalyses after treatment had been "clean," that she "felt very comfortable that he was on

6

the right track," and that she felt "Matt had no longer a drug problem." Additionally, she stated that if she had had any knowledge Matt was using drugs while an adult, she would not have purchased the gun. Martin did not attempt to clarify her statement concerning Matt's marijuana use in any way to show that the use had occurred after treatment, and we do not find that to be a reasonable interpretation of the statement. Therefore, taken in context, this one statement fails to raise any genuine issue of fact.

¶14 Further, Greg's statement does not support Martin's interpretation. Greg stated in his deposition that the Schroeders had required Matt to take drug tests after he returned from his treatments. But he was not asked nor did he state that those were the first and only drug tests they had required Matt to take, nor was there any inquiry about the results of those tests. Greg's knowledge that Matt was using marijuana prior to the treatments and of the extensive treatments to which the Schroeders subjected Matt will only support an opposite conclusion.

¶15 Martin further argues that, at the summary judgment stage of the proceedings, he is entitled to the benefit of any inference from the facts. "An inference is a fact which may be presumed from the proof of the existence or non-existence of other facts. It is a conclusion from a proven fact o[r] facts." *Buzard v. Griffin*, 89 Ariz. 42, 48, 358 P.2d 155, 159 (1960); *see also Black's Law Dictionary* 793 (8th ed. 2004). Had Martin proven that Matt's post-treatment drug tests had shown the presence of marijuana, he might have been entitled to an inference that the Schroeders knew or should have known that Matt had continued to use marijuana. But Martin failed to carry his initial burden to show that the post-treatment drug tests were in fact positive, because, as we noted above, Cathy did not

7

testify that any post-treatment drug tests indicated the presence of marijuana and Martin did not produce any other evidence indicating the test results were positive. Because Martin failed to prove the necessary predicate fact, he is not entitled to any further inference. To rule otherwise would allow the jury to draw inferences not based on probative facts. *Randall v. Alvarado-Wells*, 187 Ariz. 308, 310, 928 P.2d 732, 734 (App. 1996). Martin, therefore, has failed to raise any genuine issue of fact because a reasonable trier of fact could not find from the available evidentiary record that Matt's post-treatment drug tests were positive for marijuana. *See Allyn.*

¶16 Martin also claims he raised a genuine factual issue with his own deposition testimony that the Schroeders knew that Matt had carried a container of "clean" urine so he could pass the urine tests. But Martin had no first hand knowledge that the Schroeders were aware of it. This testimony, therefore, is inadequate to establish a genuine issue of material fact. Ariz. R. Civ. P. 56(e), 16 A.R.S., Pt. 2 (evidence in opposition to motion for summary judgment must be admissible); *In re 1996 Nissan Sentra*, 201 Ariz. 114, ¶ 6, 32 P.3d 39, 42 (App. 2001) (trial court should consider only admissible evidence). Furthermore, the incident Martin refers to occurred when Matt was sixteen or seventeen years old, before Matt had finished his drug treatment and not contemporaneously with the Schroeders' giving the gun to Matt. Martin also relies on his own testimony that Cathy Schroeder had found marijuana seeds and stems in her car after Matt had borrowed it. But, again, Martin had no first hand knowledge concerning this incident and the incident occurred, if ever, after the Schroeders had transferred the gun to Matt. Therefore, these deposition excerpts are

8

inadequate to create a genuine issue of material fact concerning the Schroeders' knowledge of Matt's drug use at the time of the transfer, and summary judgment was proper.

¶17 Martin's reliance on *Bloxham* is also unavailing. He notes that in *Bloxham*, in deciding whether to recognize a duty, we detailed the various levels of separation that existed between the manufacturer of the gun and the ultimate victim. But we did not determine that any lesser level of separation would compel the recognition of a duty, as Martin contends. Accordingly, *Bloxham* does not support Martin's position.

¶18 Martin further suggests that forseeability of harm creates a duty. That is not a correct statement of the law: "foreseeable danger d[oes] not dictate the existence of duty but only the nature and extent of the conduct necessary to fulfill the duty." *Martinez v. Woodmar IV Condos. Homeowners Ass'n*, 189 Ariz. 206, 211, 941 P.2d 218, 223 (1997). After the court determines that a duty exists based on the relationship of the parties, a factual question may exist as to whether lack of forseeability should narrow the scope of that duty; but forseeability does not create the duty. *See Knauss v. DND Neffson Co.*, 192 Ariz. 192, 196, 963 P.2d 271, 275 (App. 1997).

¶19 We conclude that past addiction to marijuana, without more, does not render the former addict permanently incompetent to receive a firearm as a matter of law for purposes of determining whether the transferor who has knowledge of the prior addiction owes a duty to an injured third party. We further determine that Martin has failed to provide any evidence that the Schroeders knew about Matt's contemporaneous marijuana use. Therefore, the Schroeders were entitled to summary judgment on Martin's negligent entrustment claim.

9

## NEGLIGENCE PER SE

**¶20**    Next, Martin argues that the trial court erred in granting the Schroeders summary judgment because the Schroeders violated § 922(d) of the Federal Gun Control Act of 1968 (Act), 18 U.S.C. §§ 921-931, and therefore were negligent per se. We review this issue de novo. *Bloxham*, 203 Ariz. 271, ¶ 6, 53 P.3d at 199.

**¶21**    Under § 922, a person is prohibited from giving a firearm to a person "knowing or having reason to believe that such person . . . is an unlawful user of or addicted to any controlled substance." Marijuana is a controlled substance for purposes of the Act. 21 U.S.C. § 802(6).

**¶22**    Arizona courts have not directly decided whether a violation of the Act's prohibition against transferring a firearm to an addict constitutes negligence per se. This court has held that violation of our state firearm statute is negligence per se. *See Crown v. Raymond*, 159 Ariz. 87, 89-90, 764 P.2d 1146, 1148-49 (App. 1988). This court has also implied that a sale of ammunition, other than for a shotgun or rifle, to a minor in violation of the Act would constitute negligence per se, but found that the defendant had not violated the statute. *Bell v. Smitty's Super Valu, Inc.*, 183 Ariz. 66, 67, 900 P.2d 15, 16 (App. 1995). Therefore, we did not explicitly find that the Act would support the imposition of a duty and standard of care and, in any event, did not consider the provisions dealing with a drug addict or user. Consequently, the issue presented here has not been decided.

**¶23**    "A duty of care and the attendant standard of conduct can . . . be found in a statute even though the statute is silent on the issue of civil liability." *Carrillo v. El Mirage Roadhouse, Inc.*, 164 Ariz. 364, 369, 793 P.2d 121, 126 (App. 1990); *see also* Restatement

10

(Second) of Torts § 286 cmt. d (1965). The court may derive a standard of care from a statute "if it first determines that the statute's purpose is in part to protect a class of persons that includes the plaintiff and the specific interest at issue from the type of harm that occurred and against the particular action that caused the harm." *Tellez v. Saban*, 188 Ariz. 165, 169, 933 P.2d 1233, 1237 (App. 1996); *see also Estate of Hernandez v. Ariz. Bd. of Regents*, 177 Ariz. 244, 253, 866 P.2d 1330, 1339 (1994) ("The existence of a statute criminalizing conduct is one aspect of Arizona law supporting the recognition of duty in this cause of action.").

¶24 The Act is at least in part a public safety statute. It was designed to keep firearms out of the possession of those persons not legally entitled to possess them because of age, criminal background, or incompetency. *See Huddleston v. United States*, 415 U.S. 814, 824, 94 S. Ct. 1262, 1268, 39 L. Ed. 2d 782, 790 (1974). Furthermore, § 925(5)(c) of the Act allows the Attorney General to release applicants from the disability to own firearms imposed by § 922 if he determines that the applicant will not be "likely to act in a manner dangerous to public safety and that the grant of the relief would not be contrary to the public interest." This reflects that Congress was concerned that unlawful drug users and addicts with firearms would intentionally and recklessly cause harm to others, which favors using the Act to establish a duty and a standard of care.

¶25 Additionally, recognizing a duty and standard of care based on the Act will not hold the public to an esoteric standard based on an obscure federal regulation. Common sense dictates against giving a firearm to an unlawful drug user or an addict, whose perceptions, physical abilities, and inhibitions have been eroded by illegal drugs, because the

11

person may use the firearm to cause harm to others. Finally, recognizing this duty is consistent with *Crown*, which recognized that a violation of the state firearms statute was negligence per se, and with *Bell*, which implied that a violation of the federal statute could be negligence per se.

¶26    Other courts that have addressed the issue of liability based on the Act have reached differing conclusions. Some have found that the Act will support a claim of negligence per se. *See, e.g.*, *Hetherton v. Sears, Roebuck & Co.*, 593 F.2d 526, 529-30 (3d Cir. 1979); *Knight v. Wal-Mart Stores, Inc.*, 889 F. Supp. 1532, 1535 (S.D. Ga. 1995); *Coker v. Wal-Mart Stores, Inc.*, 642 So. 2d 774, 776 (Fla. Dist. Ct. App. 1994). Others have concluded that it does not. *See, e.g., Lipari v. Sears, Roebuck & Co.*, 497 F. Supp. 185, 196 (D. Neb. 1980) (violation of statute is merely evidence of negligence considered with other evidence); *Hulsman v. Hemmeter Dev. Corp.*, 647 P.2d 713, 720 (Haw. 1982) (federal gun control statutes do not create civil liability); *Alderman v. Bradley*, 957 S.W.2d 264, 269 (Ky. Ct. App. 1997) (concluding that alleged violation, in context of undisputed facts, does not constitute negligence per se). We do not find any of these cases particularly helpful in determining whether Arizona should recognize civil liability for violation of the Act.

¶27    We conclude the Act's purpose is, in part, to protect the class of persons who could be harmed or injured by an unlawful drug user or addict with a gun. Therefore, it supports a claim of negligence per se. Based on the Act, we recognize a duty and derive the relevant standard of care in this case. We must next determine if Martin raised an issue of fact as to whether the Schroeders had violated the statute.

¶28 The Act incorporates the definition of "addict" in 21 U.S.C. § 802(1). Under that statute, an "addict" is an "individual who habitually uses any narcotic drug so as to endanger the public morals, health, safety, or welfare, or who is so far addicted to the use of narcotic drugs as to have lost the power of self-control with reference to his addiction." 21 U.S.C. § 802(1). Although the Act defines an "addict," it does not define the term "unlawful user." The Ninth Circuit, however, has interpreted "unlawful user" in the criminal context and has determined that, to be an unlawful user within the meaning of the statute, the user must have taken the "drugs with regularity, over an extended period of time and contemporaneously with his purchase or possession of a firearm." *United States v. Purdy*, 264 F.3d 809, 813 (9th Cir. 2001) (finding that § 922(g)(3) is not unconstitutionally vague as applied). It further stated that infrequent use in the distant past would not make the defendant an "unlawful user." *Id.* at 812; *see also United States v. Herrera*, 289 F.3d 311, 323-24, *rev'd on other grounds,* 313 F.3d 882 (5th Cir. 2002) ("unlawful user" implies pattern of use "just short of addiction"). *See generally United States v. Mack*, 343 F.3d 929 (8th Cir. 2003); *United States v. Bennett*, 329 F.3d 769 (10th Cir. 2003).

¶29 Martin failed to produce any evidence that, at the time the Schroeders gave Matt the firearm, they knew or had reason to believe he was addicted to marijuana within the meaning of the Act. Furthermore, Martin failed to raise an issue of fact as to whether, at the time of the transfer, the Schroeders knew or had reason to believe that Matt was an "unlawful user" as the term is used in § 922. As we determined above, the Schroeders knew Matt had used drugs in the past, but believed he was not using them at the time of the transfer. *See Purdy*, 64 F.3d at 812. The record in this case lacks any adequate factual basis to

13

substantiate the claim that the Schroeders knew that Matt was an unlawful user at the time they gave him the gun.  Accordingly, we conclude the trial court properly granted summary judgment on this issue.

¶30      Because there is no genuine issue of material fact and there was no error in applying the law, we affirm the trial court's judgment.


_____
                                        JOSEPH W. HOWARD, Presiding Judge


CONCURRING:


_____
J. WILLIAM BRAMMER, JR., Judge


_____
PETER J. ECKERSTROM, Judge