IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| MODULAR MINING SYSTEMS, INC., an Arizona corporation, | ) ) ) | 2 CA-CV 2008-0118 DEPARTMENT A |
| Plaintiff/Appellant, | ) ) | O P I N I O N |
| v. | ) ) | |
| JIGSAW TECHNOLOGIES, INC., an Arizona corporation; JONATHAN OLSON and NAYADE OLSON, husband and wife; and SERGIO BLACUTT and GAIL BLACUTT, husband and wife, | ) ) ) ) ) ) | |
| Defendants/Appellees. | ) ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C-20046306

Honorable Deborah Bernini, Judge

AFFIRMED

Haralson, Miller, Pitt, Feldman & McAnally, P.L.C.
  By Gerald Maltz and Peter T. Limperis                                    Tucson
                                              Attorneys for Plaintiff/Appellant

Lewis & Roca, LLP
  By John N. Iurino and Sivan R. Korn                                      Tucson
                                              Attorneys for Defendants/Appellees

E S P I N O S A, Judge.

¶1 Modular Mining Systems, Inc. ("Modular") challenges the trial court's grant of summary judgment in favor of appellees Jigsaw Technologies, Inc.; Jonathan Olson and Nayade Olson; and Sergio Blacutt and Gail Blacutt (collectively, "Jigsaw"). We affirm.

**Factual and Procedural Background**

¶2 On appeal from a summary judgment, we view the facts in the light most favorable to the party against whom judgment was entered and draw all justifiable inferences in its favor. *Ratliff v. Hardison*, 219 Ariz. 441, ¶ 2, 199 P.3d 696, 697 (App. 2008); *Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, ¶ 17, 180 P.3d 977, 981 (App. 2008). "However, we consider as true those facts alleged by [the moving party]'s affidavits that [the non-moving party] did not controvert." *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, ¶ 3, 123 P.3d 186, 188 (App. 2005).

¶3 Modular manufactures a mine-management system known as "Dispatch," which is a combination of hardware and software that gathers data about a mine's equipment and calculates the equipment's optimal use. The Dispatch system consists of a central server and one or more field units that are attached to mobile mining equipment, such as trucks and mining shovels. Each Dispatch field unit is equipped with a wireless transceiver that sends and receives messages from the central server regarding the equipment's location and operation.

¶4 Jonathan Olson is a former employee of Modular. He resigned his position as Modular's chief technical officer in August 2003 but continued to work as a part-time consultant through March 2004. Olson and Sergio Blacutt, another former employee of

2

Modular, formed Jigsaw in October 2003, initially to create software products for the quarry industry, a market Modular does not serve. Less than a year later, however, Jigsaw expanded its products to include the mining industry, placing Jigsaw in direct competition with Modular. Jigsaw's mine-management system is marketed under the name "MineOps." Like Dispatch, MineOps provides mine monitoring and optimization through wireless communications between a central server and field units mounted on the mine's mobile equipment.

¶5         Modular filed this action in 2004. Its original complaint named Jigsaw and eight individual defendants and included claims of misappropriating trade secrets in violation of Arizona's Uniform Trade Secrets Act,[1] unfair competition, intentional interference with business relationships, intentional interference with contract, "aiding and abetting," and conspiracy, as well as claims of breach of employment agreements and breach of the covenant of good faith and fair dealing. Modular also sought a preliminary injunction against Jigsaw. The trial court denied the requested injunction in May 2005 after a five-day evidentiary hearing, and this court affirmed on appeal. Modular then amended its complaint in August 2007. The amended complaint sought only injunctive relief and punitive damages, named half of the original individual defendants, and abandoned Modular's claims of conspiracy, aiding and abetting, and breach of the covenant of good faith and fair dealing.

¶6         In its statutory trade secrets claim, Modular contended Jigsaw had misappropriated two computer configuration codes ("commands") and used them to allow

_____

[1]A.R.S. §§ 44-401 through 44-407.

Jigsaw's field units to communicate with Modular's field units aboard selected vehicles at two mines in Peru and Argentina.[2] Modular sought injunctive relief prohibiting Jigsaw from utilizing these commands.

¶7        Jigsaw moved for summary judgment on all of Modular's claims in January 2008. In its reply to Modular's opposition to its motion, Jigsaw asserted it had been unaware Modular considered the particular commands to be trade secrets until Jigsaw took the deposition of Modular's expert in February 2008.[3] Jigsaw further asserted that, upon learning Modular considered the commands to be trade secrets, it immediately discontinued their use and implemented an alternate procedure using a command contained in Modular's published guides and manuals. Jigsaw disputed Modular's assertion that the two commands at issue were trade secrets, and it maintained that, in any event, the Dispatch systems would be decommissioned in both mines by the end of 2008.[4] Modular did not dispute that Jigsaw

---

[2]Modular previously had asserted additional allegations of misappropriation of trade secrets by Jigsaw, including that Jigsaw had misappropriated portions of Modular's source code. The trial court found Modular had abandoned such claims by the time Jigsaw moved for summary judgment in January 2008, a finding Modular does not dispute on appeal.

[3]Because Modular's expert was unavailable until after the deadline for dispositive motions, Jigsaw was unable to take his deposition until after it had filed its motion for summary judgment.

[4]Jigsaw also explained that both mines had decided in 2006 to replace their Dispatch systems with MineOps. Both mines previously had been using Modular's radio-based communications equipment but, to comply with pending legislation by their respective governments banning the use of radio frequencies in mines, it became necessary to replace the mines' radio networks with new communications systems. Jigsaw's wireless infrastructure uses a commercial Wi-Fi standard permitted by the legislation. Accordingly, during the phased transition to MineOps, Jigsaw had installed its own field units that could communicate with the Dispatch field units remaining aboard some of the mines' equipment.

4

was using the commands only at the two specified mines in Peru and Argentina or its assertion that both mines stopped using Dispatch during 2008.

¶8 The trial court granted Jigsaw's summary judgment motion in its entirety. As part of its decision, the court determined Modular's claim for injunctive relief was moot. It also awarded Jigsaw its requested attorney fees, in the amount of $510,561.50, pursuant to A.R.S. §§ 12-341.01 and 44-404. We have jurisdiction over Modular's appeal pursuant to A.R.S. §§ 12-120.21(A)(1) and 12-2101(B).

**Discussion**

¶9 Modular argues the trial court erred in finding its claim for injunctive relief moot, in granting summary judgment on its trade secrets claim, and in awarding attorney fees.[5] "We review a superior court's 'grant of summary judgment on the basis of the record made in [that] court, but we determine *de novo* whether the entry of [summary] judgment was proper.'" *Nat'l Bank*, 218 Ariz. 112, n.3, 180 P.3d at 980 n.3, *quoting Schwab v. Ames Constr.*, 207 Ariz. 56, ¶ 17, 83 P.3d 56, 60 (App. 2004) (alterations in *Nat'l Bank*). In determining whether the court properly granted summary judgment, we apply the same standard a trial court uses in ruling on a summary judgment motion. *Id.*

¶10 The entry of summary judgment is appropriate "if the pleadings, deposition[s], answers to interrogatories, and admissions on file, together with the affidavits, if any, show

---

[5]Modular does not appeal the trial court's grant of summary judgment on its claims of breach of employment agreements, unfair competition, or intentional interference with business relationships and contracts, nor its determination that punitive damages are unavailable.

5

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Ariz. R. Civ. P. 56(c)(1).

> When a moving party meets its initial burden of production by showing that the non-moving party does not have enough evidence to carry its ultimate burden of proof at trial, the burden then shifts to the non-moving party to present sufficient evidence demonstrating the existence of a genuine factual dispute as to a material fact.

*Nat'l Bank*, 218 Ariz. 112, ¶ 26, 180 P.3d at 984.  "To defeat the motion, the non-moving party must call the court's attention to evidence overlooked or ignored by the moving party or must explain why the motion should otherwise be denied."  *Id.*

¶11        Applying these principles, we first address Modular's argument that the trial court erroneously found moot its request for an injunction prohibiting Jigsaw from "using, directly or indirectly, [Modular's] confidential, proprietary, or trade secret information." Modular argues the court erred in making its determination "without hearing from the witnesses" and contends it "is entitled to have the trier of fact evaluate the evidence and determine whether Jigsaw infringed and whether injuncti[ve] relief against future infringement is warranted."

¶12        "The issue of injunctive relief is moot when the 'events make it absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" *SAL Leasing, Inc. v. State ex rel. Napolitano*, 198 Ariz. 434, ¶ 39, 10 P.3d 1221, 1229 (App. 2000), *quoting State ex rel. Babbitt v. Goodyear Tire & Rubber Co.*, 128 Ariz. 483, 486, 626 P.2d 1115, 1118 (1981).  "[T]he burden of proof . . . in any action for injunction . . . is upon the plaintiff to show a likelihood that the defendant will in the future engage in the conduct sought to be

6

enjoined." *Babbitt*, 128 Ariz. at 487, 626 P.2d at 1119. "Factors that may point to a danger of future violations include past violations, involuntary cessation of the violations, and their continuance in disregard of the lawsuit." *SAL Leasing*, 198 Ariz. 434, ¶ 39, 10 P.3d at 1229. Although "the mere cessation of illegal conduct does not necessarily render a case moot . . . the 'necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Winokur v. Bell Fed. Sav. & Loan Ass'n*, 560 F.2d 271, 274 (7th Cir. 1977), *quoting United States v. W.T. Grant Co.*, 345 U.S. 629, 632-33 (1953).

¶13        Here, the trial court reasoned that Modular's claim for injunctive relief was moot, because: "Plaintiff has not contested Defendants' factual assertion that as soon as Jigsaw learned of the newest allegation in February 2008, it terminated the challenged form of reconfiguration and implemented an alternative method which did not use any of the information Plaintiff alleged to be secret." Accordingly, the court found, "[T]he sole remedy sought by Plaintiff is an injunction, [and] there is nothing to enjoin."

¶14        On appeal, Modular contends its expert, Dr. Sandeep Chatterjee, "controverted Jigsaw's contention that its assertion that it would discontinue integrating its products with Modular's at two identified mine sites in the future renders its use of Modular's configuration code 'moot.'" Modular relies on the following portion of Chatterjee's affidavit:

> I disagree with this assessment [that the issue is moot] and I believe that the information used by Jigsaw to integrate its systems with those of Modular is central to this matter, in general, and to the current motion for summary judgment, in

7

particular. As I wrote on pages 26-28 of my expert report, I believe that "Jigsaw's ability to seamlessly integrate with and interoperate with Modular's products allowed Jigsaw to enter a market it otherwise probably would not have been able to enter." This conclusion is supported by a number of data points, including documentation from Jigsaw's potential clients . . . and Jigsaw's own sales material, which stated that a potential client would be able to "Maximize [its] current Investment" because Jigsaw's systems interoperate with and upgrade Modular's systems . . . .

Therefore, I believe that even if Jigsaw ceases its integration with Modular's systems, Jigsaw's previous actions related to the integration are akin to the well-known *fruit of the poisonous tree* metaphor. That is, Jigsaw's previous performance of integrations with Modular's systems, if those integrations utilized Modular trade secret information, would need to be carefully assessed to determine whether those previous integrations have *enabled* or *contributed*, in any way, to Jigsaw's current and/or future ability to deploy its systems without integration with Modular's systems.

¶15 Modular has the burden of proving its claim for injunctive relief and can only defeat Jigsaw's motion for summary judgment by demonstrating that disputed, genuine issues of material fact necessitate a trial. "If the party with the burden of proof on the claim . . . cannot respond to the motion by showing that there is evidence creating a genuine issue of fact on the element in question, then the motion for summary judgment should be granted." *Nat'l Bank,* 218 Ariz. 112, ¶ 21, 180 P.3d at 982. "A 'genuine' issue is one that a reasonable trier of fact could decide in favor of the party adverse to summary judgment on the available evidentiary record." *Martin v. Schroeder*, 209 Ariz. 531, ¶ 12, 105 P.3d 577, 580 (App. 2005).

8

¶16 For several reasons, Chatterjee's statements fail to satisfy Modular's burden "to come forward with evidence establishing the existence of a genuine issue of material fact that must be resolved at trial." *Nat'l Bank,* 218 Ariz. 112, ¶ 12, 180 P.3d at 980. First, nothing in the cited portion of his affidavit provides any evidence controverting Jigsaw's factual assertions that it had used the disputed commands in only two mines and had stopped using them once it learned Modular considered them to be trade secrets. Thus, Modular has failed to demonstrate that a disputed issue of material fact remains concerning its claim for injunctive relief—namely, that in any current or future installations, Jigsaw will or may need to use the disputed commands.

¶17 The substance of Chatterjee's statements—the possibility that Jigsaw could benefit from its past use of Modular's trade secrets—is irrelevant to Modular's claim for injunctive relief, the only relief sought in its amended complaint. Thus, Chatterjee's theory that "Jigsaw's ability to seamlessly integrate with and interoperate with Modular's products allowed Jigsaw to enter a market it otherwise probably would not have been able to enter" does nothing to demonstrate a genuine factual dispute concerning Modular's claim for injunctive relief. *Cf. Menendez v. Paddock Pool Constr. Co.*, 172 Ariz. 258, 269-70, 836 P.2d 968, 979-80 (App. 1991) (expert affidavit opposing summary judgment failed to create genuine issue of material fact where opinion expressed immaterial to legal question at issue). Rather, as Jigsaw correctly points out, "Chatterjee's theory merely addressed the market[ing] advantage Jigsaw had supposedly gained from 'previous' integrations, assuming they would cease."

9

¶18     Furthermore, Chatterjee's statements are clearly dependent on additional research and further discovery: "previous performance of integrations with Modular's systems, <u>if those integrations utilized Modular trade secret information</u>, <u>would need to be carefully assessed to determine</u> whether those previous integrations have *enabled* or *contributed*, in any way, to Jigsaw's current and/or future ability to deploy its systems without integration with Modular's systems." (Underline emphasis added.) This language would be more appropriate in support of a Rule 56(f) motion; it does not demonstrate the existence of a genuine factual dispute precluding summary judgment.[6]

¶19     Indeed, this portion of Chatterjee's affidavit contains only speculation and no specific facts demonstrating a material factual dispute concerning Modular's claim for injunctive relief. "An expert affidavit opposing a motion for summary judgment must set forth 'specific facts' to support an opinion." *Florez v. Sargeant*, 185 Ariz. 521, 526, 917 P.2d 250, 255 (1996), *quoting* Ariz. R. Crim. P. 56(e). "Sheer speculation is insufficient . . . to defeat summary judgment." *Badia v. City of Casa Grande*, 195 Ariz. 349, ¶ 29, 988 P.2d 134, 142 (App. 1999); *see also Menendez*, 172 Ariz. at 269, 836 P.2d at 979 ("Speculation that some slight doubt, scintilla of evidence, or dispute over irrelevant or immaterial facts

---

[6]Rule 56(f), Ariz. R. Civ. P.  provides that a court "may refuse the application for judgment or may order a continuance to permit . . . depositions to be taken or discovery to be had."

10

might blossom into a real controversy at trial is insufficient to forestall summary judgment.").[7]

¶20 Modular nevertheless contends the trial court erred in finding its claim for injunctive relief moot because "[a] defendant cannot simply declare it has stopped the objectionable activity . . . and thus defeat the plaintiff's claim for an injunction." But we agree with Jigsaw that Modular failed to produce any "evidence suggesting that there is any reason or likelihood that Defendants would revert to using the previous configuration procedure." Because Modular did not come forward with any evidence disputing Jigsaw's facts or otherwise demonstrating a genuine issue of material fact warranting a trial on its entitlement to an injunction, Modular failed to meet its burden in opposing Jigsaw's motion for summary judgment.[8] Accordingly, the trial court correctly determined Modular's request

<hr>

[7]Modular also argues "Jigsaw's own sales materials inform potential clients that . . . 'Jigsaw's systems interoperate with and upgrade Modular's systems.'" But lacking is Modular's explanation of how this shows Jigsaw should be enjoined from using Modular's trade secrets. Likewise, Modular asserts, "[E]ven if, as Jigsaw now claims, it ceased its proven (and admitted) integration with Modular's systems, those integrations may have enabled or contributed to Jigsaw's current or future capacity to deploy its systems without integration." Again, Modular's vague and speculative language does not explain what trade secrets it seeks to enjoin Jigsaw from using, let alone controvert Jigsaw's evidence that it already had implemented an alternative to the two disputed commands and would stop all integrations with Dispatch in 2008. The same is true for Modular's conclusory contention that "Jigsaw's interoperability with Modular's systems will continue to enable Jigsaw to enter into markets and opportunities in which Modular has a presence—utilizing Modular's trade secrets."

[8]Without citation of authority, Modular asserts Jigsaw's refusal to stipulate to an injunction also demonstrates its claim for injunctive relief is not moot, arguing "[t]hat alone is evidence [Jigsaw] intends to leave the door open to a repetition of its infringement." Jigsaw counters that this assertion "has no basis in the record and is untrue" and claims it is based on Modular's counsel's suggestion at the hearing on Jigsaw's motion for summary

11

for injunctive relief was moot. Because we affirm that ruling and because Modular's

amended complaint sought only injunctive relief, we need not reach its claim that Jigsaw

misappropriated Modular's trade secrets.[9]

---

judgment that the parties "could probably enter into a stipulation and solve the case and settle the case and everybody could go home." Jigsaw asserts it "did not 'refuse' counsel's suggestion" but, rather, "the parties exchanged settlement correspondence, but were unable to reach agreement." It is unclear whether Modular's isolated statement at the hearing was sufficient to present this argument to the trial court. *See Schoenfelder v. Ariz. Bank*, 165 Ariz. 79, 90, 796 P.2d 881, 892 (1990) ("On appeal from summary judgment, we will not consider new factual theories raised in an attempt to secure reversal of the trial court's determinations of law."); *Rand v. Porsche Fin. Servs.*, 216 Ariz. 424, n.8, 167 P.3d 111, 121 n.8 (App. 2007) (appellate court does not consider arguments not first presented to trial court). In any event, we do not find the mere fact Jigsaw refused to stipulate to the injunction Modular sought can satisfy Modular's burden of coming forward with evidence to refute Jigsaw's otherwise undisputed factual assertion that it no longer used, nor would use in the future, the two commands at issue.

[9]Likewise, we need not address the propriety or implication of Jigsaw's motion brought pursuant to Rule 56(d), which Modular failed to oppose and the trial court granted. By its terms, Rule 56(d) applies only when summary judgment is not granted in its entirety. The rule provides specific procedures for its application:

> If on motion under this Rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy . . . . Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

**Attorney Fees Award**

¶21 Pursuant to §§ 12-341.01 and 44-404, the trial court awarded Jigsaw all of its requested attorney fees in the amount of $510,561.50. Section 12-341.01(A) provides that, in "any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." The applicability of § 12-341.01(A) "is a question of statutory interpretation, which we review *de novo*." *Ramsey Air Meds, L.L.C. v. Cutter Aviation, Inc.*, 198 Ariz. 10, ¶ 12, 6 P.3d 315, 318 (App. 2000). "The trial court's decision on the amount of fees to award is reviewed under the abuse of discretion standard." *Id*.

¶22 Modular does not dispute Jigsaw's entitlement to attorney fees incurred in connection with Modular's claims for breaches of employment agreements. However, it argues Jigsaw is not entitled to any attorney fees incurred in defending Modular's trade secrets claim because this claim did not "aris[e] out of a contract" as § 12-341.01(A) requires. Jigsaw contends the trial court properly awarded all of its requested attorney fees because Modular's trade secrets claim does "aris[e] out of a contract" under § 12-341.01(A) and because Jigsaw's fees were "incurred in litigating interwoven and overlapping contract and tort claims."

¶23 Because we agree Modular's claims were inextricably interwoven, we conclude the trial court did not abuse its discretion in awarding Jigsaw the full amount of its fee request. Accordingly, we need not reach the separate and more difficult issue whether Modular's trade secrets claim and other claims "ar[o]s[e] out of a contract" for purposes of

13

§ 12-341.01(A). *See A.H. ex rel. White v. Ariz. Prop. & Cas. Ins. Guar. Fund*, 190 Ariz. 526, 529, 950 P.2d 1147, 1150 (1997) (noting § 12-341.01(A)'s requirement that claim arise from contract "has proven to be a matter of some difficulty for the courts when questions of contract are mixed or combined with other questions, such as tort law or statutory interpretation"). "It is well-established that a successful party on a contract claim may recover not only attorneys' fees expended on the contract claim, but also fees expended in litigating an 'interwoven' tort claim." *Ramsey Air Meds*, 198 Ariz. 10, ¶ 17, 6 P.3d at 318; *see also Campbell v. Westdahl*, 148 Ariz. 432, 441, 715 P.2d 288, 297 (App. 1985) ("Attorney's fees may be awarded under [§ 12-341.01(A)] for tort claims that are intertwined with contract claims."); *Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183, 189, 673 P.2d 927, 933 (App. 1983) (in cases where "one claim for relief may involve related legal theories," "'[m]uch of counsel's time [may] be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis'"), *quoting Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983); *cf. City of Cottonwood v. James L. Fann Contracting, Inc.*, 179 Ariz. 185, 195, 877 P.2d 284, 294 (App. 1994) (trial court "has significant discretion to award fees in a matter intertwined with another matter for which it may not grant attorney's fees").[10]

---

[10]Other jurisdictions have reached a similar conclusion. *See, e.g.*, *Erickson v. R.E.M. Concepts, Inc.*, 25 Cal. Rptr. 3d 39, 48 (Cal. Ct. App. 2005) (trial court could reasonably find plaintiff's various claims against defendant "were 'inextricably intertwined' . . . making it 'impracticable, if not impossible, to separate the multitude of conjoined activities into compensable or noncompensable time units'"; affirming attorney fees award "[b]ecause [plaintiff]'s tort theories and [defendant]'s defense to [plaintiff]'s contractual theories were interrelated as raising common issues requiring virtually identical evidence"), *quoting*

¶24 It is undisputed that the central claims in this litigation were the trade secrets claim and the breach of employment contract claims. The record demonstrates these claims were based on the same set of facts, involving the common allegation that Jigsaw had misappropriated and made use of Modular's trade secrets. Accordingly, as Jigsaw asserts, these claims "required the same factual development and research work," and "all depositions and all other work related to discovery and disclosure w[ere] necessary in connection with both claims."

¶25 The legal issues concerning these claims were also intertwined and overlapping. First, the trade secrets claim was premised on the asserted misappropriation of Modular's trade secrets, which was allegedly committed primarily by the individual

---

*Abdallah v. United Sav. Bank*, 51 Cal. Rptr. 2d 286, 293 (Cal. Ct. App. 1996); *Chodorow v. Moore*, 947 So. 2d 577, 579 (Fla. Dist. Ct. App. 2007) ("In the event a party is entitled to an award of fees for only some of the claims involved in the litigation, i.e., because a statute or contract authorizes fees for a particular claim but not others, the trial court must evaluate the relationship between the claims and 'where the claims involve a common core of facts and are based on related legal theories, a full fee may be awarded *unless it can be shown that the attorneys spent a separate and distinct amount of time on counts as to which no attorney's fees were sought [or were authorized].'*"), *quoting Anglia Jacs & Co. v. Dubin*, 830 So. 2d 169, 172 (Fla. Dist. Ct. App. 2002) (alterations and emphasis in *Chodorow*); *Sunset Fuel & Eng'g Co. v. Compton*, 775 P.2d 901, 904 (Or. Ct. App. 1989) ("Attorney fees need not be apportioned when they are incurred for representation on an issue common to a claim in which fees are proper and one in which they are not."); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313-14 (Tex. 2006) ("Intertwined facts do not make tort fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated."); *Brown v. David K. Richards & Co.*, 978 P.2d 470, ¶ 19 (Utah Ct. App. 1999) (attorney fees may be awarded "even though some of the fees may not have been incurred on strictly compensable issues, because proof of the compensable and non-compensable claims overlapped"); *Dice v. City of Montesano*, 128 P.3d 1253, ¶ 31 (Wash. Ct. App. 2006) ("If the court finds that claims are so related that segregation is not reasonable, then it need not segregate the attorney fees.").

defendants' breaching the confidentiality provisions of their employment agreements and using Modular's "inside information." Similarly, whether the commands Modular claimed as trade secrets were in fact "trade secrets" for purposes of the Uniform Trade Secrets Act was likewise substantially dependent on the confidentiality provisions of the employment agreements.[11] Finally, Modular's unfair competition and tortious interference claims were based on the same set of facts as its trade secrets claim. As Jigsaw explains, those claims "were completely dependent upon Modular's ability to prevail on its misappropriation claims" and "required no separate legal services."

¶26        Because we have concluded the trial court did not abuse its discretion in awarding Jigsaw the full amount of its requested attorney fees pursuant to § 12-341.01, and because the court made its award pursuant to both §§ 12-341.01 and 44-404, we need not determine whether the award also was warranted under § 44-404.[12] *See Kuehn v. Stanley*, 208 Ariz. 124, ¶ 33, 91 P.3d 346, 354 (App. 2004) (where attorney fees award affirmed under one theory, no need to reach arguments pertaining to alternative theory).

---

[11]The Uniform Trade Secrets Act defines a "trade secret" as information that both "[d]erives independent economic value . . . from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." § 44-401(4). Modular claimed the confidentiality provisions in its employment contracts demonstrated that it took reasonable precautions to maintain the secrecy of its confidential information.

[12]Section 44-404 of the Uniform Trade Secrets Act allows a court to award the prevailing party reasonable attorney fees on a misappropriation claim made in bad faith. § 44-404(1).

**¶27** Finally, Jigsaw has requested an award of attorney fees on appeal pursuant to §§ 12-341.01, 44-404, and Rule 21, Ariz. R. Civ. App. P. As outlined above, Jigsaw has prevailed on the dispositive claims raised in Modular's appeal. Therefore, in the exercise of our discretion, we grant Jigsaw its reasonable attorney fees on appeal in an amount to be determined upon its compliance with Rule 21(c).

### Disposition

**¶28** For the reasons set forth above, we affirm the trial court's grant of summary judgment and attorney fees award, and we grant Jigsaw its attorney fees on appeal.

_____
PHILIP G. ESPINOSA, Judge

CONCURRING:


_____
JOSEPH W. HOWARD, Presiding Judge


_____
JOHN PELANDER, Chief Judge