NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JANE DOE, *Plaintiff/Appellant,*

*v.*

IGLESIA BAUTISTA CENTRAL, *Defendant/Appellee.*

No. 1 CA-CV 23-0681
FILED 06-04-2024

Appeal from the Superior Court in Maricopa County
No. CV2020-017482
The Honorable Dewain D. Fox, Judge

**AFFIRMED**

COUNSEL

Mick Levin, PLC, Phoenix
By Mick Levin
*Counsel for Plaintiff/Appellant*

Righi Fitch Law Group, PLLC, Phoenix
By Elizabeth Savoini Fitch, Melissa Lin
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Angela K. Paton delivered the decision of the Court, in which Judge Michael S. Catlett and Judge James B. Morse Jr. joined.

---

**P A T O N**, Judge:

¶1        Jane Doe appeals the superior court's grant of summary judgment in favor of defendant Iglesia Bautista Central church ("IBC"). Doe argues the court erred in finding no triable issue of fact regarding IBC's knowledge of sexual abuse by her stepfather.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2        We view the facts and reasonable inferences in the light most favorable to Doe as the party opposing summary judgment.  *See Doe v. Roman Catholic Church of Diocese of Phoenix*, 255 Ariz. 483, 486, ¶ 2 (App. 2023).  In December 2020, Doe sued IBC asserting, inter alia, negligence and negligence per se claims, pursuant to House Bill 2466 Section 3(C), for failure to report sexual abuse by her stepfather, Elias Serrano.  *See* 2019 Ariz. Law, ch. 259, § 3(C) (H.B. 2466) (codified at Arizona Revised Statutes ("A.R.S.") § 12-514).

¶3        Doe alleged that Serrano abused her from ages 13 to 17.  In her deposition, Doe stated that her husband found a journal in which she had written about Serrano's abuse, and asked Doe whether her mother ("Mother") knew about the abuse.  Doe responded: "No, my mom doesn't know.  Nobody knows.  I was going to take it to the grave and not tell anybody."  Doe confirmed in her deposition that it was only after her husband read her journal years after the abuse that they confronted Serrano and told Mother about Serrano abusing Doe when she was a child.  Doe also confirmed in her deposition that she "told nobody from the church."

¶4        When asked how IBC members would have known about the abuse, Doe described one occasion where Mother walked in on Serrano sexually abusing Doe.  Serrano came into Doe's room while Doe was lying down, laid on top of her, and tried to rub her stomach.  Doe stated that Serrano groped her breasts, side, and thighs, and that Mother appeared in the doorway, loudly asking, "What are you doing?"  Doe stated that

Serrano quickly got up and Mother grabbed Doe's arm, took her out of the room, and ushered Doe and her sisters to the car. Mother then drove to the home of IBC founding member, Patsy Carr, and her husband, Paul. During the drive, Mother observed Doe smiling at her sister in an attempt to comfort her, at which time Mother slapped Doe on the cheek and asked, "Do you like what he is doing to you?"

¶5　　　Doe stated the unannounced visit to the Carrs' house was "unusual," and that the Carrs were having lunch with Pastor Hernandez, IBC's pastor and also a founding member, when they arrived. Mr. Carr answered the door, and Mother asked whether they could come in, stating that she needed to tell them something. After entering the Carrs' house, Mother directed Doe and her sisters to the living room. Mother, the Carrs, and Pastor Hernandez then went into another room and closed the door. Doe stated that she and her sisters could not hear the adults' discussion. After the approximately one-hour long meeting, Mother drove the children home.

¶6　　　About a week after Mother's visit to the Carrs' house, Mother told Doe that she was sending Doe to see a counselor. Doe believes that Pastor Hernandez and the Carrs recommended this counselor, who focused on trauma, abuse, and sexual abuse. Doe also stated that after this visit, she noticed a change in her relationship with the Carrs—specifically, that they had assumed a "grandparent role of checking" in with her. Doe believes that these newfound check-ins meant the Carrs and Pastor Hernandez knew that Serrano had abused her, thereby establishing a duty to report the abuse to authorities. *See* 2019 Ariz. Law, ch. 259, § 3(C) (H.B. 2466) ("A cause of action . . . may be brought against a person who was not the perpetrator of the sexual conduct or sexual contact if that person knew or otherwise had actual notice of any misconduct that creates an unreasonable risk of sexual conduct or sexual contact with a minor by an employee, a volunteer, a representative or an agent.").

¶7　　　In Mother's sworn statement, she provided a different recollection of the incident in Doe's bedroom—which Doe states was the only occasion Mother would have witnessed Serrano's abuse. Mother said that when she walked into the bedroom, she saw Doe sitting on the bed and Serrano standing next to the bed. And when Mother asked what they were doing, Serrano responded that "[n]othing is happening," and then Doe started crying. Mother said the incident concerned her because she did not know why Doe was crying if nothing had happened. Mother stated she then went to the Carrs' house with Doe and her sisters, and that she told the Carrs and Pastor Hernandez she needed help for a family matter, and

asked if they could recommend a counselor. Mother avowed that there was no discussion between her and the Carrs about what happened with Doe, stating, "What could I tell them if I hadn't seen anything?"

**¶8**        After two years of discovery and pretrial proceedings, IBC moved for summary judgment on the basis that there was no evidence in the record establishing that IBC knew Serrano was sexually abusing Doe, and thus Doe's negligence and negligence per se claims fail as a matter of law. IBC asserted that no one from its community was notified of Serrano's abuse, citing Doe's deposition statements that she told no one from IBC about the abuse and that she was "going to take it to the grave and not tell anybody," and also Mother's sworn statement that she did not know about Serrano's abuse at the time.

**¶9**        The superior court concluded that Doe had not presented sufficient evidence to create a triable issue of fact regarding whether IBC knew of Serrano's sexual abuse of Doe. The court noted that the meeting at the Carrs' house was the only alleged basis for IBC and Pastor Hernandez to know about the abuse. It also noted that Mother swore she did not have a conversation about Serrano's abuse or what she saw in the bedroom, and that she only asked the Carrs and Pastor Hernandez for the name of a church counselor who helps with family matters; the court found it significant that Doe did not dispute this part of IBC's statement of facts.

**¶10**        Citing Doe's concession that there was no direct evidence that Mother told Pastor Hernandez or the Carrs about the sexual abuse, the superior court concluded Doe's proffered evidence did not give a reasonable inference that Mother told IBC members about Serrano's abuse. The court determined "the evidence would invite the jury to engage in mere speculation on this issue," and "there is insufficient evidence from which a jury reasonably could determine that IBC had notice of Serrano's sexual abuse of [Doe], and therefore, had a duty to report such abuse to authorities." The court then granted IBC's motion for summary judgment.

**¶11**        Doe timely appealed, and we have jurisdiction pursuant to Sections 12-2101(A)(1) and -120.21(A)(1).

## DISCUSSION

**¶12**        Doe argues that she presented evidence from which a jury could reasonably infer Mother told the Carrs and Pastor Hernandez she had seen Serrano abusing Doe. Doe cites her deposition statements as evidence—specifically, that Mother met with the Carrs and Pastor Hernandez for more than an hour immediately after seeing Serrano and

Doe in the bedroom, and that upon the IBC members' recommendation, Mother took Doe to see a counselor who focused on trauma, abuse, and sexual abuse.

¶13      We review the superior court's grant of summary judgment de novo, viewing the facts and reasonable inferences in the light most favorable to the party opposing the motion. *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12 (2003) (citation omitted). Summary judgment is proper when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a). We will affirm the entry of summary judgment if it is appropriate for any reason. *ADP, LLC v. Ariz. Dep't of Revenue*, 254 Ariz. 417, 421, ¶ 5 (App. 2023) (citation omitted).

¶14      "When a moving party meets its initial burden of production by showing that the non-moving party does not have enough evidence to carry its ultimate burden of proof at trial," the non-moving party must then "present sufficient evidence demonstrating the existence of a genuine factual dispute as to a material fact." *Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 119, ¶ 26 (App. 2008) (citation omitted). If the non-moving party "cannot respond to the motion by showing that there is evidence creating a genuine issue of fact on the element in question, then the motion for summary judgment should be granted." *Orme Sch. v. Reeves*, 166 Ariz. 301, 310 (1990). A genuine factual dispute "is one that a reasonable trier of fact could decide in favor of the party adverse to summary judgment on the available evidentiary record." *Modular Mining Sys., Inc. v. Jigsaw Techs., Inc.*, 221 Ariz. 515, 520, ¶ 15 (App. 2009) (quoting *Martin v. Schroeder*, 209 Ariz. 531, 534, ¶ 15 (App. 2005)).

¶15      The non-moving party may support its opposition by affidavit, depositions, answers to interrogatories, or admissions, *see* Ariz. R. Civ. P. 56(c)(5), (6), but "unsworn and unproven assertions of facts are insufficient," *see McCleary v. Tripodi*, 243 Ariz. 197, 201, ¶ 21 (App. 2017) (citation omitted). The non-moving party does "not raise a genuine issue of fact by merely stating in the record that such an issue exists. Rather, [the non-moving party] must show that competent evidence is available which will justify a trial on the issue." *Flowers v. K-Mart Corp.*, 126 Ariz. 495, 499 (App. 1980) (citations omitted).

¶16      Doe conceded in her deposition that nobody from IBC knew of Serrano's abuse, stating that she was planning to "take it to the grave and not tell anybody." When asked about the incident with Mother—which Doe cites as the only occasion that would have alerted Mother and IBC members to the abuse—Doe stated she "never talked to [her] mom about

. . . that occasion," and never talked to the Carrs or Pastor Hernandez about their meeting with Mother. Doe confirmed in her deposition there was nothing else that would have put IBC on notice of Serrano's abuse. And when asked whether she ever told Mother about Serrano's abuse while it was happening or whether she was generally uncomfortable around Serrano during her childhood years, Doe said she did not talk to Mother about Serrano.

**¶17** Doe solely relies on the speculation that Mother told IBC about Serrano's abuse. Such speculation is insufficient to defeat summary judgment. *See Desert Palm Surgical Grp., P.L.C. v. Petta*, 236 Ariz. 568, 583, ¶ 42 (App. 2015) (plaintiffs' testimony and conclusory statements regarding damages, "unsupported by any documentary evidence," were speculative); *Modular Mining Sys., Inc.*, 221 Ariz. at 520, ¶ 19 ("Sheer speculation is insufficient . . . to defeat summary judgment.") (quoting *Badia v. City of Casa Grande*, 195 Ariz. 349, 357, ¶ 29 (App. 1999)). On this record, the superior court correctly granted summary judgment.

**CONCLUSION**

**¶18** We affirm.

