NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JOSHUA PAPIAS,
*Plaintiff/Appellee*,

*v.*

PARKER FASTENERS LLC,
*Defendant/Appellee*.

No. 1 CA-CV 22-0775
FILED 10-17-2023

Appeal from the Superior Court in Maricopa County
No. CV2021-018939
The Honorable Jay Adleman, Judge

**VACATED AND REMANDED**

COUNSEL

Weiler Law PLLC, Phoenix
By James Weiler
*Counsel for Plaintiff/Appellant*

Radix Law, Scottsdale
John J. Balitis
*Counsel for Defendant/Appellee*

---

## MEMORANDUM DECISION

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Andrew M. Jacobs and Chief Judge David B. Gass joined.

---

**B R O W N**, Judge:

**¶1**        Joshua Papias ("Papias") appeals the superior court's order granting summary judgment on his claim that Parker Fasteners, LLC ("Parker") violated Arizona's Fair Wages and Healthy Family Act ("Act"), A.R.S. § 23-371 *et seq.*, by firing him in retaliation for his attempt to use earned paid sick time ("sick time"). Because material issues of fact exist that preclude summary judgment, we vacate the order and remand for further proceedings.

## BACKGROUND

**¶2**        Parker is an Arizona company with more than fifteen employees. On May 28, 2019, Papias was hired to work as a "Headerman" at Parker's manufacturing facility. Parker gave Papias its employee handbook, which states that full-time, regular employees "accrue sick [time] from the date of hire, for a total of 5 days per year."[1] According to Parker, the "year" begins on the employee's hiring date. The handbook also states that sick time may be used for the employee's personal illness or to care for immediate family members. But sick time cannot be used before it is accrued, and medical documentation is required if an employee takes sick time for more than three consecutive working days. If sick time "is exhausted, any available vacation hours will be used in its place." Vacation time can only be used after accrual, which does not begin until one year from an employee's first day of full-time employment.

**¶3**        Parker uses the "Paychex" payroll system, which presumptively allows employees to access their paystubs, tax documents,

---

[1]        The handbook uses the phrase "sick leave," but the Act describes it as "sick time." Under A.R.S. § 23-372(a), "[e]mployees of an employer with 15 or more employees shall accrue a minimum of one hour of earned paid sick time for every 30 hours worked," up to 40 hours unless the employer elects to exceed that limit.

health and benefits information, and available paid time off. Employees can request time off through Paychex.

¶4 Parker's employment practices deviated from its handbook policies in several instances. During Papias' first year of employment, he "used" 40 hours of sick time between July 1, 2019, and December 22, 2019. Despite being classified as "sick time," many if not all the hours Papias took off from work were for absences unrelated to any sickness. For example, Papias requested time off for family gatherings, travel, and personal appointments. Although the record does not show that Papias asked to be paid for such absences, Parker paid him for the absences by classifying the hours taken as sick time, which was reflected in his paystubs. During the first year, Parker also advanced, or frontloaded, 48 hours of paid vacation time to Papias despite its policy that accrual of paid vacation time does not begin until *after* one year of employment.

¶5 Papias' second year began on May 28, 2020. He again requested time off repeatedly without indicating he was asking for sick time or to be paid for his absences. Parker continued to allow Papias to take time when he requested it for personal reasons but nonetheless classified the hours as "sick time" to pay him full paychecks. According to Parker's accounting department employee, Papias used 48 hours of sick time for his absences between August 24, 2020, and December 29, 2020. And because Parker had frontloaded Papias 40 hours of paid vacation time during his first year of his employment, Papias had no available paid vacation time available to use in his second year of work unless Parker decided to advance it to him like it did during his first year of employment.

¶6 On Monday, March 1, 2021, Papias did not report to work. He had previously told his supervisor he would be out of town and he understood his leave for that day would be *unpaid*. On Tuesday, March 2 (5:02 a.m.), Papias texted his supervisor, stating: "I woke up with a sore throat . . . [Do] [y]ou want me to just wear a mask." His supervisor replied, "I would but it's up to you." Papias then texted his line lead stating he would be staying home because he woke up with a sore throat. Papias sought medical treatment that day and was "diagnosed with an acute upper respiratory infection." He tested negative for COVID-19. Later that evening, Papias texted his supervisor and line lead that he would not be at work the next day, March 3, because his nose was congested, his head hurt, and he had body aches. On the evening of March 3, Papias texted that he would not be at work the next day because he had a headache and body aches. The next morning (Thursday, March 4), Papias' supervisor told him that he needed to provide Parker with (1) a doctor's note "when you com[e]

[in] on Monday," and (2) a COVID-19 test result "before you come back to work."

¶7        On Monday, March 8, Papias returned to work and had a meeting with his supervisor and Parker's human resources ("HR") director. The supervisor expressed skepticism that Papias had been ill, informed him that his absences had placed "a lot of stress" on the supervisor the previous week, and stated that because Parker no longer needed Papias, his employment was terminated.

¶8        Papias sued Parker for unlawful termination under the Act, alleging Parker: (1) retaliated because he tried to use sick time; (2) failed to provide him with notice of the amount of sick time available to him, the amount taken by him to date in the year, the amount of pay he had received as sick time; and (3) violated the notice requirements of A.R.S. § 23-375(A).  Papias sought damages in an amount to be proven at trial.

¶9        Parker moved for summary judgment.  It argued that Papias' retaliation claim under A.R.S. § 23-374(B) failed as a matter of law because: (1) he had no sick time available to use when he did not appear for his shifts in March 2021; (2) he did not request to use sick time for those absences; and (3) regardless, he was terminated for "performance issues."  As to the allegations that it violated the notice requirements of A.R.S. § 23-375(A) and (C), Parker argued the statute does not create a private right of action for employees to enforce the provisions and recover penalties.  Even so, Parker argued it complied with the statutory requirements in subsection (A) by prominently displaying a poster of Arizona state labor laws at its facility, and it complied with subsection (C) because all employee sick time information was available via Paychex.

¶10        Papias countered that genuine issues of material fact existed on all three claims.  He disputed Parker's claim that he had no available sick time left to use in March 2021.  For example, Papias argued Parker unlawfully applied his accrued sick time to absences that it knew were unrelated to any of the reasons for which using sick time is permissible under the Act, and it did so without him requesting to use sick time. Although Papias agreed he was paid for such hours, he argued that but for Parker applying sick time to his non-sickness related absences, he would have had sick time available to use in March.  Papias also argued Parker violated the Act by terminating him for requesting sick time in March 2021. Papias asserted that the court should presume his termination was in retaliation for his assertion of rights, and Parker had not produced clear and convincing evidence it terminated him for productivity issues.

4

¶11        As to the § 23-375(C) notice provisions, Papias argued the required data was not "recorded in, or on an attachment to" his regular paycheck. Papias disputed that Parker complied with the statutory requirements because he did not have access to view the amount of accrued sick time available to him on Paychex and such data was not recorded on his paystubs. He argued the information reflected in Parker's exhibits was not previously available to him, and moreover, the data reflected on the paystubs and Paychex screenshot appeared to be contradictory.

¶12        Following oral argument, the superior court granted Parker's motion for summary judgment. The court found there was no evidence of unlawful retaliation, "largely due to the fact that [Papias] did not have any accrued sick leave at the time of his termination." The court was not persuaded by Papias' theory of unlawful application of sick time, because it found Parker paid him for sick time in the required amount, Papias was aware that Parker applied sick time to his absences, and this information about his pay was digitally available to him at all relevant times. The court also found that the "undisputed record" demonstrated Parker complied with the notice requirements under § 23-375 (A) and (C) because Parker provided Papias with the required data through Paychex. The court declined to decide whether the Act creates a private right of action for employees asserting violations of § 23-375. Papias timely appealed, and we have jurisdiction under A.R.S. § 12-2101(A).

## DISCUSSION

¶13        Papias argues the court erred in granting summary judgment because the facts upon which it relied are disputed, and even if they were undisputed, it would "not prevent a jury from concluding that [Parker] violated the Act." Summary judgment is appropriate when no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a). A "genuine" issue of fact is one that a reasonable trier of fact could decide in favor of the party adverse to judgment on the available evidentiary record. *Martin v. Schroeder*, 209 Ariz. 531, 534, ¶ 12 (App. 2005). We review the superior court's ruling de novo, "viewing the evidence and reasonable inferences in the light most favorable to the party opposing the motion." *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12 (2003).

### A.    Retaliation

¶14        Papias argues the court erred by concluding there was no evidence his termination was an adverse action of retaliation. Under the

Act, an employer cannot retaliate against an employee for requesting, using, or attempting to use sick time. A.R.S. § 23-374(B) (employer cannot "engage in retaliation or discriminate against an employee" for exercising the "rights protected under this article"); *see also* A.R.S. § 23-374(A) ("It shall be unlawful for an employer or any other person to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right protected under this article."). As stated in the poster "prominently displayed" in the breakroom of Parker's manufacturing facility:

> Employers are prohibited from discriminating against or subjecting any person to retaliation for: (1) asserting any claim or right under the Act, including requesting or using earned paid sick time; (2) assisting any person in doing so; or (3) informing any person of their rights under the Act. *See* [A.R.S.] § 23-373 for more information.

**¶15** An employee "injured by a violation" of the statute may bring an action against their employer. A.R.S. § 23-364(E), (H). Retaliation includes "any threat, discharge, suspension, demotion, reduction of hours, or any other adverse action against an employee for the exercise of any right guaranteed." A.R.S. § 23-364(B). If an employer takes adverse action, such as termination, against an employee within 90 days of a request to use or the use of sick time, it "shall raise a presumption that such action was retaliation." *Id.*; *Jett v. Cnty. of Maricopa*, CV-19-02735-PHX-DLR, 2022 WL 345004, at *4 (D. Ariz. Feb. 4, 2022). The presumption "may be rebutted by clear and convincing evidence that such action was taken for other permissible reasons." A.R.S. § 23-364(B).

**¶16** Papias contends the superior court's ruling is improperly based on disputed facts, or the facts are such that a reasonable jury could still determine, that Parker retaliated against him. Papias argues he engaged in protected activity by requesting or attempting to request to use sick time when he notified Parker of his need to be absent from work due to illness. He asserts the Act protects employees from retaliation regardless of whether they have sick time available when they need to be absent from work for an illness. Parker counters that the court properly rejected the retaliation claim because Papias did not have sick time available to use for his March 2021 absences. Parker points out that Papias "admits" and his "payroll records show" that he had already used his sick time for the year. For several reasons, we conclude the court erred in granting summary judgment.

¶17          First, it is undisputed Papias was absent from work on December 29, 2020, and Parker classified his absence as sick time, which means Papias "used" 7.5 hours of sick time that day.[2]  Parker fired Papias on March 8, 2021, within 90 days of when he used paid sick time.  Thus, the record plainly shows that Parker took adverse action against Papias within 90 days of his "use" of sick time.  *See* A.R.S. §§ 23-364(B), –374(B).  A presumption therefore exists, as a matter of law, that Parker's action was retaliatory under the Act.  Although Papias raised the 90-day presumption by relying on § 23-374(B), he did not specifically tie it to the sick time usage on December 29, 2020.  Though he arguably waived that argument, we must view the evidence in the light most favorable to Papias, and it is undisputed that Papias "used" sick time in late December 2020.  Thus, the 90-day presumption applies.

¶18          Yet even if Papias waived the 90-day "use" presumption, disputed factual issues exist on whether the presumption nonetheless applies because he was terminated for requesting to use sick time or other available leave time, or that such time could be made available when he informed Parker he would not be able to work for three days in March 2021 due to illness.  This is so because Parker admits it front-loaded paid sick and vacation time to its employees despite the policies set forth in its handbook.  For Papias, Parker advanced him the maximum 40 hours of paid vacation time his first year of employment, in direct conflict with its vacation policy.  And during Papias' second year of employment, Parker paid him for 48 hours of sick time, 8 more than the maximum specified in the handbook.  A jury could reasonably conclude that Papias' attempt to use sick time was justified, given Parker's practice of front-loading vacation time and sick time.

¶19          Moreover, the superior court erred by concluding that Parker gave proper notice to Papias of his accrued, used, and available sick time, because at the very least, genuine factual disputes exist as to whether Parker's conflicting information inhibited proper notice.  Under A.R.S. § 23-375(C), the amount of sick time available, taken to date in the year, and sick pay received, must be "recorded in, or on an attachment to, the employee's regular paycheck."  An "'employee's regular paycheck' means

---

[2]          The fact that these hours were used and paid in excess of the 40-hour minimum is immaterial.  *See Martin v. Arise Inc.*, CV-21-08244-PCT-DJH, 2023 WL 4237332, at *10 (D. Ariz. June 28, 2023).  When an employer provides more sick time hours than statutorily required by the Act, it is still obligated to comply with the rights outlined in the Act on the use of sick time.  *See* A.R.S. § 23-378(A), (B).

a regular payroll record that is readily available to employees and contains information required under A.R.S. § 23-374(C), including physical or electronic paychecks or paystubs." A.A.C. § R20-5-1202.

¶20 Papias disputes that he had access to Paychex, "which is a necessary prerequisite to providing notice to employees." He claims he was unable to access Paychex during his first year of employment and he was therefore limited to the information shown on his paystubs. It was not until February 2021 that Papias accessed Paychex because his supervisor instructed him that Parker wanted employees to begin using the system to schedule time off.

¶21 Next, Papias disputes that the information reflected in the Paychex screenshot was the same information available to him while he was an employee. Rather, the information shown was from a view of "the payroll administrator's available information." And regardless of his access to Paychex, Papias argues the screenshot (which Parker claims shows the amount of sick time available and taken) reflects "inaccurate data." Papias also argues his paystubs reported conflicting information and prevented him from having proper notice about his sick time. He notes that the paystubs reported the amount for sick time used "year-to-date," leading him to believe that accrual restarted every calendar year. Thus, he asserts, the paystubs did not serve as an accurate record for him to determine how much sick time he had remaining.

¶22 Reviewing the record in the light most favorable to Papias, a genuine factual dispute exists as to whether he had reasonable access to Paychex, or whether Paychex contains the information required by law. We agree the online portal Paychex uses to post the data constitutes a "regular payroll record," but Parker's undated screenshot at best suggests conflicts as to what specific data was accessible to Papias while he was employed. *See Finton v. Cleveland Indians Baseball Co. LLC*, 2021, CV-19-02319-PHX-MTL, WL 661975, at *11–12 (D. Ariz. Feb. 19, 2021) (denying summary judgment because although employer's online payroll system was "simple and easy to use," there was no undisputed evidence it contained the information required by the Act). For example, the screenshot shows Papias had accrued only 40 hours of sick time and used 56 hours of sick time, with a zero balance, and reflects projected balances through February 11, 2022. Regardless of whether the report is from Papias' first or second year of employment, it does not align with the amount of sick time Papias reportedly took during either year—40 and 48 respectively. Based on the evidence provided, Paychex did not accurately inform Papias of his used sick time.

**¶23** For similar reasons, disputed evidence exists on whether Papias' paystubs provided him with the notice required under § 23-374(C). Arguably, the hours that Parker classified as sick time pay during a particular pay period were properly recorded in his paystubs. But the amount of sick time available and taken to date during the current anniversary year of his employment is not unambiguously recorded in his paystubs. For example, it is not immediately apparent what "YTD HOURS" represents, because each paystub reports different hours, and those reported hours do not seem to correspond with the hours Papias allegedly took during the related employment year. The paystub covering the pay period from December 27, 2020, to January 2, 2021, lists 17.50 "Sick" hours for that pay period, but then states the same amount for YTD hours. However, by January 2, 2021, Papias had already used 40.50 "Sick" hours (according to a paystub for the pay period ending December 12, 2020). Based on the record before us, a genuine dispute of material fact exists on whether the paystubs accurately informed Papias of his sick time available and taken, as Arizona law requires.[3]

**¶24** Finally, we reject Parker's suggestion that Papias did not "request" to use sick time in March, but instead merely informed his supervisors via text message he would not be coming to work because he was ill. The Act states that an employee's request to use sick time "may be made orally, in writing, by electronic means or by any other means acceptable to the employer." A.R.S. § 23-373(B). Although the handbook does not specify the "acceptable means" by which an employee must request to use paid sick time, Parker asserts that "a *notification* that you are ill and cannot attend work" is not an acceptable request. But Parker agrees that while Papias had been employed, it was acceptable for him to notify his supervisor via text message about a request for time off from work. Thus, Parker apparently believed that Papias' earlier texts, which merely asked for time off, were sufficient to invoke usage of sick time. It is therefore unreasonable to conclude that when Papias told Parker he was sick the message could be rejected as too informal. *See* A.R.S. § 23-374(A) ("It shall be unlawful for an employer or any other person to interfere with, restrain, or deny the exercise of, or *the attempt to exercise*, any right protected

---

[3] Arizona state courts have not addressed whether the Act's notice requirements create a private right of action for an employee to recover civil damages. *See Vega v. All My Sons Bus. Dev. LLC*, 583 F. Supp. 3d 1244, 1257–1260 (D. Ariz. 2022) (finding that no private right of action exists). But we need not decide that issue because whether Parker fully complied with its statutory notice obligations is relevant in evaluating Papias' retaliation claim under the Act.

under this article.") (emphasis added).  Material facts in the record reveal a genuine dispute on whether Papias' text messages to his supervisor in March 2021 were requests to use sick time, or at a bare minimum, an attempt to do so.

¶25            Given the factual disputes outlined above, the court erred in granting summary judgment on Papias' retaliation claim.  Thus, we need not attempt to resolve the parties' disagreement on whether the Act allows employers to classify non-sickness-related absences as sick time.

### B.    Rebuttal of Presumption

¶26            Because the superior court found no evidence of retaliation, it did not consider whether Parker rebutted the presumption of retaliation with "clear and convincing evidence" that its termination of Papias was for "other permissible reasons."  A.R.S. § 23-364(B).  Papias argues Parker failed to produce sufficient evidence to overcome the presumption that his termination was retaliatory.  According to Parker, it met the rebuttal presumption burden and Papias failed to counter its evidence once the burden shifted back to him.

¶27            Clear and convincing evidence "reflects a heightened standard of proof," as it must indicate "that the thing to be proved is highly probable or reasonably certain."  *Kent K. v. Bobby M.*, 210 Ariz. 279, 284–85, ¶ 25 (2005) (citation omitted).  Parker explains that it terminated Papias, in part, because it "no longer needed [him.]"  In support of its motion for summary judgment, however, Parker asserted it terminated Papias because of "productivity issues," about which it began to have concerns in October 2020.  But Parker's only support for this assertion was a declaration by an employee from its accounting department.  Parker otherwise provided no documentation supporting its claims that in October 2020 it "became concerned about Papias' production at work," that Papias' supervisor "began addressing these concerns with Papias," or that Parker "began tracking Papias' production more closely and [his supervisor] discussed these issues regularly with him."  *See Hoeveler v. Ariz. Assocs. in Dermatology & Cosmetic Surgery LLC*, 1 CA-CV 20-0120, 2021 WL 56402, at *3, ¶ 15 (Ariz. App. Jan. 7, 2021) (mem. decision) (explaining that employer met its burden of showing retaliation was for permissible reasons when it "offered emails, contemporaneous documents and deposition testimony" as support); *see also Zavaleta v. OTB Acquisition LLC*, CV 19-04729-PHX-JAT, 2021 WL 824419, at *6 (D. Ariz. Mar. 4, 2021).

¶28        In his response opposing summary judgment, Papias avowed his supervisor "never discussed any actual production issues with [him] in October of 2020 or thereafter." Further, he was "never informed by [Parker] that they were more closely monitoring" his work than they were any other employee's work. And in support of his claims, Papias provided a copy of his August 2020 performance review, where his supervisor indicated that Papias' work performance was "exceptional" and recommended a rate increase, which Parker instituted by October.

¶29        Parker also asserts that Papias "conceded" that his absences in March 2021 "put a lot of stress" on his supervisor. The record shows otherwise. Although Papias acknowledged that the "stress" comment was made at the March 8 termination meeting, he points out that at the start of the meeting he gave the HR director the requested medical note from his doctor, but the director said it was "meaningless" and the supervisor had "already made a decision." And his supervisor told Papias that Parker did not believe he was actually sick, but instead, thought Papias "just didn't want to come to work." According to Papias, no concerns about production issues were raised at the meeting. And the record is silent on what "stress" he had caused the supervisor to endure. The record reveals genuine factual disputes as to whether Papias was fired for permissible reasons rather than in retaliation. *See Kuramoto v. Heart & Vascular Ctr. of Ariz. PC*, CV-20-00113-PHX-SMB, 2021 WL 2012668, at *5–6 (D. Ariz. May 20, 2021). Thus, Parker has not shown, as a matter of law, that it rebutted the presumption by clear and convincing evidence.

## CONCLUSION

¶30        We vacate the court's order granting summary judgment and remand for further proceedings.

